UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

# 04-12031 PBS

```
RAJENDRA BADGAIYAN, M.D.,              )
                                       )
          Plaintiff,                   )
                                       )      MAGISTRATE JUDGE Alexanler
v.                                     )
                                       )
ANTHONY J. PRINCIPI, Secretary,        )
Department of Veterans' Affairs;       )
President and Fellows of               )
HARVARD UNIVERSITY;                    )
and GRACE MUSHRUSH, M.D.,              )
                                       )
                                       )
          Defendants.                  )
                                       )
```

RECEIPT # 58824
AMOUNT $150
SUMMONS ISSUED 482
LOCAL RULE 4.1
WAIVER FORM
MCF ISSUED
BY DPTY. CLK. fLW
DATE 4/21/14

## COMPLAINT AND JURY CLAIM

### I. INTRODUCTION

1.    Dr. Rajendra Badgaiyan brings this action seeking
injunctive relief and compensatory damages against defendants
Anthony J. Principi as he is Secretary of the United States
Department of Veterans Affairs; the President and Fellows of
Harvard University; and Dr. Grace Mushrush, as a remedy for their
discrimination against him on account of his race and national
origin (South Asian/Indian); for their retaliation against him;
and for other causes. He seeks orders requiring defendants to
cease and desist from their discriminatory and retaliatory
practices based on his race and national origin; and to correct

to the extent possible the damage done by their past
discrimination.

## II. JURISDICTION

2.    Jurisdiction over the parties and subject matter of
this action is conferred upon this Court by 42 U.S.C. 2000e-5(f).

## III. PARTIES

3.    Plaintiff Rajendra Badgaiyan, M.D., ("Dr. Badgaiyan")
is a natural person with an address of 122A Sycamore Street,
Somerville, Massachusetts, 02145.  He is a native of the South
Asian nation of India and was born and raised there.

4.    Defendant Anthony J. Principi ("Secretary Principi") is
Secretary of the Department of Veterans Affairs of the United
States (the "V.A.").  The Department of Veterans Affairs is an
agency of the government of the United States of America.  It
operates a number of facilities to serve the needs of veterans of
military service, including a hospital which provides psychiatric
care (among other services) to veterans from a location at 940
Belmont Street, Brockton, Massachusetts ("the facility".)

5.    Defendant President and Fellows of Harvard University
("Harvard") are a corporation organized on information and belief
under the laws of the Commonwealth with a customary and usual
place of business at Harvard Yard, Massachusetts Avenue,

-2-

Cambridge, Massachusetts 02138. Harvard University grants degrees in, among other subjects, medicine; and operates programs certifying successful participants in a variety of medical specialties, including psychiatry. One such program it operates at defendant Veterans Administration's Brockton facility.

6. Defendant Grace Mushrush, M.D., ("Dr. Mushrush") is a natural person with a business address of 940 Belmont Street, (116A7), Brockton, MA 02301.

## IV. FACTS

7. Dr. Badgaiyan is an accomplished student of medicine and psychology with a number of distinctions already to his credit at this early point in his career.

8. He has been ranked first in his class; was awarded a prestigious fellowship; and published some sixty articles on issues in his particular areas of expertise (neuroscience), some sixteen during his residency alone.

9. Dr. Badgaiyan is also distinguished by his appointment to the Harvard Medical School faculty also at this early stage of his career.

10. In addition to the M.D. degree, Dr. Badgaiyan holds the M.B. and B.S. degrees from Gandhi Medical College; and the M.S. Degree in psychology from Bhopal University in India.

11. Among various academic positions Dr. Badgaiyan has held are Instructor and Clinical Fellow at Harvard Medical

-3-

School; Research Associate at Harvard University; Postdoctoral
Fellow at the University of Pittsourgh; Research Associate at the
University of Oregon; Associate and Assistant Professor at
Banaras Hindu University; and Lecturer at Medical College,
Rohtak, India.

12.   After his years of study, research and teaching, Dr.
Badgaiyan decided in or about 2001 to seek to enter the practice
of medicine in the specialty of psychiatry, and enrolled in
defendant Harvard's South Shore Psychiatry Residency Training
Program (the "program"), operated at the facility in cooperation
with defendant Secretary Principi's Department of Veterans
Affairs.

13.   Initially, Dr. Badgaiyan received outstanding
evaluations for most of his work in the South Shore training
program.

14.   Within a short time after he enrolled and began
participating in instruction in the program, however, Dr.
Badgaiyan became aware of certain attitudes demonstrated by the
program's director, defendant Dr. Mushrush.

15.   Among his observations were anti-South-Asian remarks
made by defendant Dr. Mushrush, including disparaging remarks
concerning physicians of Indian extraction and about the quality
of medical institutions and medical education in India.

16.   Defendant Dr. Mushrush became particularly critical of

-4-

Dr. Badgaiyan, seemingly directing particular unwarranted criticism, derogatory remarks and disadvantageous treatment.

17.   On information and belief, defendant Dr. Mushrush has on at least one occasion acknowledged that some of this criticism was and is unfounded.

18.   Among the false statements defendant Dr. Mushrush circulated about Dr. Badgaiyan were assertions that he is a poor physician; that he is not interested in the practice of psychiatry; that he needs to undergo psychotherapy; that he told supervisors he preferred not to be assigned to their rotations; that he absented himself during part of the program to travel to India; and other like comments.

19.   Among the negative acts Dr. Mushrush committed was requiring Dr. Badgaiyan to repeat training rotations he had already passed with a grade of "outstanding" or "good", on information and belief an unprecedented action for this program.

20.   Other acts defendant Dr. Mushrush committed included manipulating Dr. Badgaiyan's training schedule needlessly to compel Dr. Badgaiyan to take six to nine months to complete certain components of training which could have been completed in one or two months.

21.   Additionally, defendant Dr. Mushrush obstructed Dr. Badgaiyan's growth as a physician and student of medicine by denying him access to evaluations of his performance prepared by

-5-

the heads of the rotations he participated in in the program, thus preventing him from benefitting from the comments they contained.

22. Less significant but painful nevertheless, defendant Dr. Mushrush acted in ways that prevented Dr. Badgaiyan from receiving his diploma at the graduation ceremony for his group of residents (the only resident in the history of the program to be so stigmatized).

23. Other medical professionals of Indian and South Asian extraction involved in the program or otherwise engaged at the facility also recounted to Dr. Badgaiyan their own observations of negative remarks concerning South Asians as well.

24. Additionally, defendants Harvard and Secretary Principi knew or should have known of these offensive, illegal discriminatory statements and actions of defendant Dr. Mushrush.

25. The groundless negative statements made by defendant Dr. Mushrush have damaged Dr. Badgaiyan's reputation and career; and are continuing to do him harm.

26. Perhaps the most tangible negative effect has been defendant Dr. Mushrush' having provided derogatory material concerning Dr. Badgaiyan to the Commonwealth of Massachusetts Board of Registration in Medicine (the "Board"), which licenses physicians in Massachusetts.

27. Among these materials on information and belief was

-6-

an assertion concerning a "probation" status defendant Dr. Mushrush claimed Dr. Badgaiyan was on but which on information and belief was never approved by the Promotions Committee of the program, which on information and belief has ultimate authority over participant status.

28.    Additionally, defendant Dr. Mushrush on information and belief provided complaints of dubious provenance and validity to the Board without providing Dr. Badgaiyan an opportunity to review or comment on them.

29.    These actions of defendant Dr. Mushrush have delayed, and may prevent, Dr. Badgaiyan being licensed to practice, which, should it occur, will have a serious negative economic impact on him and his family.

30.    As of the date of filing of this Complaint, Dr. Mushrush' actions in failing and refusing to sign a statement simply confirming that he participated in the program have seriously jeopardized Dr. Badgaiyan's receipt of a fellowship which was awarded to him but which is contingent on his being licensed.

31.    Dr. Badgaiyan has consistently protested defendant Dr. Mushrush' discriminatory conduct, objecting first to her, and subsequently to others involved in leadership in the program.

32.    Dr. Badgaiyan's protests, however, had little or no effect; and the racial hostility and negativity continued.

-7-

33.    The continuous, pervasive negative remarks and responses against him had a foreseeable effect on Dr. Badgaiyan, and he soon required medical treatment for life-threatening hypertension; and for depression.

34.    Defendant Dr. Mushrush has continued to act in negative and damaging ways towards Dr. Badgaiyan from the time of her first negative remarks and conduct towards him up through the date of filing of this Complaint.

35.    Finally, with his completion of the program needlessly delayed for about a year by defendant Dr. Mushrush' actions, and frustrated that his efforts to work within the institutions of defendants Harvard and Secretary Principi to achieve relief, Dr. Badgaiyan filed a formal complaint with defendant Secretary Principi's equal opportunity office.

36.    When that office rejected his complaint and defendant Dr. Mushrush failed to respond to additional efforts to redress the problems through counsel, he brought the present action.

## V. CAUSES OF ACTION

## COUNT I:  DISCRIMINATION ON ACCOUNT OF RACE AND NATIONAL ORIGIN

37.    Dr. Badgaiyan hereby realleges and incorporates herein all allegations contained in foregoing paragraphs of this Complaint as if fully set out herein.

38.    Federal law, 42 U.S.C. §2000e-2(a),(d), prohibits

-8-

discrimination in the terms and conditions of employment and in training, in on account of an individual's race, color or national origin.

39.  Defendant Dr. Mushrush behaved in a discriminatory manner towards Dr. Badgaiyan by making negative statements about South Asian physicians and their training, by delaying and interfering in his completion of his program, by withholding from him his performance evaluations, and by intervening with Dr. Badgaiyan's immediate training physicians in an effort to persuade them to downgrade his performance evaluations.

40.  By acting in a discriminatory manner in her treatment of Dr. Badgaiyan as a member of the program, defendant Dr. Mushrush has violated federal law.

41.  By failing to take effective action to halt defendant Dr. Mushrush discriminatory conduct towards Dr. Badgaiyan, of which they knew or should have known, defendants Secretary Principi and Harvard have violated federal law.

42.   Dr. Badgaiyan has suffered material and substantial injury and damage as a direct and proximate result of defendants' illegal discrimination against him.

COUNT II: HOSTILE ENVIRONMENT RACIAL HARASSMENT

43.   Dr. Badgaiyan hereby realleges and incorporates herein all allegations contained in all foregoing paragraphs of this Complaint as if fully set out herein.

-9-

44.   Federal law, 42 U.S.C. §2000e-2(a),(d), prohibits discrimination in the terms and conditions of employment and in training, in on account of an individual's race, color or national origin.

45.   Dr. Badgaiyan was subjected to discrimination by means of defendants' creation of a racially hostile environment in the program.

46.   The racially hostile environment arose on account of defendant Dr. Mushrush' derogatory and negative comments and statements concerning South Asian physicians, medical institutions, and medical training, of which defendants Secretary Principi and Harvard knew or should have known.

47.   The racially derogatory and negative comments made by defendant Dr. Mushrush were severe, pervasive and unwelcome to the degree that it created an abusive employment environment affecting terms and conditions of Dr. Badgaiyan's training.

48.   Defendants knew or should have known of the extent and degree of the harassment experienced by Dr. Badgaiyan and others under its instruction and in its employ, and its effect on them, yet failed to take remedial action.

49.   By permitting, and failing to eliminate, correct or remedy, a work environment hostile to persons of Indian and South Asian extraction, defendants discriminated against Dr. Badgaiyan in violation of 42 U.S.C. 2000-e et. Seq.

-10-

50.  Dr. Badgaiyan has suffered material and substantial injury and damage as a direct and proximate result of defendants' illegal discrimination against him.

COUNT III: RETALIATION

51.  Dr. Badgaiyan hereby realleges and incorporates herein all allegations contained in foregoing paragraphs of this Complaint as if fully set out herein.

52.  Federal law prohibits employers and trainers from taking negative action or otherwise retaliating against persons who have asserted rights guaranteed them by the federal law prohibits retaliation against persons for engaging in activities protected by that statute, or for seeking to prevent actions prohibited under the statute, or for aiding and supporting others in asserting their rights as guaranteed by that statute., see 42 U.S.C. 2000e-3(a).

53.  After Dr. Badgaiyan filed a formal internal Equal Employment Opportunity complaint with defendant Secretary Principi's institution, Dr. Mushrush continued to act negatively towards him.

54.  More specifically, when Dr. Badgaiyan presented defendant Dr. Mushrush with his application for a physician's license from the Board, Dr. Mushrush failed and refused for a substantial period of time to confirm his participation in the program, as required by the application; and on information

-11-

and belief responded with erroneous negative information.

55.    When Dr. Badgaiyan, frustrated by defendant Dr.
Mushrush' failure to act on his application, subsequently
presented an application for a limited license, approval of which
can be completed more quickly, defendant Dr. Mushrush again
failed and refused to act on the limited license application.

56.    As a result of defendant Dr. Mushrush' failure to act
on Dr. Badgaiyan's applications, Dr. Badgaiyan will in all
likelihood be denied a fellowship for further study, which
fellowship is contingent on his holding a license as a physician.

57.    Dr. Badgaiyan engaged in a protected activity in
connection with his employment and training when he first
protested Dr. Mushrush negative statements about and conduct
towards him; and later filed a formal internal complaint with
defendant Secretary Principi's institution to object to defendant
Dr. Mushrush' actions against him.

58.    By failing to complete the license applications
presented to her by Dr. Badgaiyan following his filing of a
formal discrimination complaint against her, defendant Dr.
Mushrush retaliated against Dr. Badgaiyan in violation of federal
law 42 U.S.C. 2000-e.

59.    Dr. Badgaiyan has suffered material and substantial
injury and damage as a direct and proximate result of
defendant's illegal retaliation against him.

## COUNT IV BREACH OF CONTRACT BY DEFENDANTS

60.  Dr. Badgaiyan hereby realleges and incorporates herein all allegations contained in foregoing paragraphs of this Complaint as if fully set out herein.

61.  On information and belief, defendants Secretary Principi and Harvard have adopted rules and regulations regarding conduct which set out policies covering how participants in the program should conduct themselves and, among other subjects, appropriate practices for how participants in training programs should be treated, including how such participants should be informed of their progress and performance in those programs.

62.  On information and belief, these rules provide that participant performance evaluations be made available to them at least twice per year so they may benefit from their evaluators' comments in seeking to improve their work. (See, ACGME Program Requirements IV Internal Evaluation, Section A.2.)

63.  As a condition of his participation in the program, Dr. Badgaiyan was expected to obey these rules of conduct.

64.  The rules of conduct and regulations concerning how participants in the program were to conduct themselves and how they were to be informed concerning their performance imposed obligations of a contractual nature on defendants.

65.  By failing and refusing, in Dr. Badgaiyan's case, to comply with the regulations, guidelines and rules they had

-13-

adopted concerning how participants in the program should conduct themselves and how they should be informed of their progress, defendants violated their contractual obligations to Dr. Badgaiyan.

66.   By failing to act in accordance with the policies and guidelines for informing program participants of their progress in the program, defendants breached their contract with Dr. Badgaiyan.

67.   Dr. Badgaiyan was materially and substantially damaged and injured by defendants' breach of their contract with him.

## COUNT V: INTERFERENCE WITH ADVANTAGEOUS RELATIONS

68.   Dr. Badgaiyan hereby realleges and incorporates herein all allegations contained in foregoing paragraphs of this Complaint as if fully set out herein.

69.   Dr. Badgaiyan was an experienced, established student of medicine and neuroscience when he entered the program, and defendant Dr. Mushrush knew of his status.

70.   Dr. Badgaiyan had been seeking further opportunities to study and to put his medical expertise in service in ways that would produce income for him and his family, and defendant Dr. Mushrush knew or should have known this.

71.   In the second half of calendar year 2004, Dr. Badgaiyan had won a fellowship for further study in his

-14-

specialty, , which would have provided income for the support of him and his family, and defendant Dr. Mushrush knew or should have known of this.

72.   Without a license to practice medicine, for which he had applied and asked for Dr. Mushrush' endorsement, Dr. Badgaiyan would lose his fellowship and with it his and his family's financial support for the coming months, and defendant Dr. Mushrush knew or should have known of this.

73.   By failing and refusing to act on his applications for either a license, or a limited license, to practice medicine, defendant Dr. Mushrush interfered in the advantageous rela⁺ionship Dr. Badgaiyan had with the provider of the fellowship he had won.

74.   Dr. Badgaiyan was materially and substantially damaged and injured by defendant's intentional interference in the advantageous relationship he enjoyed with the provider of the fellowship he won.

## COUNT VI: DEFAMATION

75.   Dr. Badgaiyan hereby realleges and incorporates herein all allegations contained in foregoing paragraphs of this Complaint as if fully set out herein.

76.   Within several months of Dr. Badgaiyan's entering the program, defendant Dr. Mushrush communicated false and derogatory information about Dr. Badgaiyan's performance.

-15-

77.    Prior to the communication by defendant Dr. Mushrush of false and derogatory allegations concerning Dr. Badgaiyan's capacities as a physician and his performance in training to Dr. Badgaiyan's supervisors and colleagues, Dr. Badgaiyan enjoyed a strong, positive reputation among colleagues, peers and co-workers in the medical community.

78.    By knowingly and intentionally communicating false allegations about Dr. Badgaiyan to others in the medical community, defendant Dr. Mushrush published damaging information concerning Dr. Badgaiyan to a significant part of the medical community of which he is a part.

79.    The false allegations by defendant Dr. Mushrush were communicated with malice in a conscious and intentional effort to damage Dr. Badgaiyan's strong, positive reputation in the medical community without lawful basis.

80.    Dr. Badgaiyan was materially and substantially damaged and injured as a direct and proximate result of defendant Dr. Mushrush' communication of the false and derogatory information about her to her colleagues and co-workers in the disaster relief community.


COUNT VII: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

81.    Dr. Badgaiyan hereby realleges and incorporates herein all allegations contained in the foregoing paragraphs of this

-16-

Complaint as if fully set out herein.

82.   Defendant Dr. Mushrush knew or should have known of Dr. Badgaiyan's past success as a student of medicine and neuroscience, and of the importance of reputation in the medical field.

83.   Defendant Dr. Mushrush knew or should have known that her frequent unwarranted negative comments about, and conduct towards, Dr. Badgaiyan would have a severe impact upon him emotionally.

84.   Knowing this, and in the face of Dr. Badgaiyan's protests both formal and informal, defendant Dr. Mushrush continued her pattern of making inaccurate and false negative comments and behavior towards Dr. Badgaiyan.

85.   These acts of defendant Dr. Mushrush were beyond the scope of her function as an employee of defendants Secretary Principi and Harvard; and she was not acting in the interests of those defendants when she made these inaccurate and false statements and performed the other acts set out herein.

86.   These knowing actions and false and inaccurate statements of the defendant Dr. Mushrush are extreme and outrageous and beyond all bounds of decency; and are utterly intolerable in a civilized community.

87.   Defendant Dr. Mushrush knew or should have known that her statements and actions would cause Dr. Badgaiyan emotional

distress, particularly in light of her knowledge of Dr. Badgaiyan's vulnerability to negative comments as a student of medicine.

88.  Defendant Dr. Mushrush breached her duty of care in the way in which she continued making unwarranted and inaccurate critical and negative remarks about Dr. Badgaiyan.

89.  A reasonable person in Dr. Badgaiyan's position would have experienced similar emotional distress to that experienced by Dr. Badgaiyan.

90.  Dr. Badgaiyan was materially and substantially damaged and injured as a direct and proximate result of defendant Dr. Mushrush' infliction of emotional distress upon him.

## VI. RELIEF

WHEREFORE YOUR PLAINTIFF RAJENDRA Badgaiyan, M.D., hereby respectfully requests that this Honorable Court:

1.  Issue its Order for Notice calling on defendants to appear and show cause why its order should not enter against them requiring them to:

a.  Forthwith cease and desist from uttering false, unwarranted and inaccurate statements concerning Dr. Badgaiyan; and

b.  Forthwith take all necessary and appropriate steps to assure the completion of their part(s) in his application for

-18-

licensure by the Commonwealth of Massachusetts Board of Registration in Medicine, again without repeating utterances unwarranted and inaccurate false negative and critical statements about him and his qualifications for the practice of medicine;

2. Following hearing, enter its orders requiring defendants to:

a. Forthwith cease and desist from uttering stating, or otherwise disseminating any false, deleterious, unwarranted or inaccurate statements concerning Dr. Badgaiyan; and

b. Forthwith take all necessary and appropriate steps to assure the completion of their part(s) in his application for licensure by the Commonwealth of Massachusetts Board of Registration in Medicine, again without repeating utterances unwarranted and inaccurate false negative and critical statements about him and his qualifications for the practice of medicine;

c. Provide Dr. Badgaiyan forthwith with copies of all evaluations bearing on his participation in the residency training program they administer;

d. Withdraw forthwith any and all wrongful deleterious matter you have provided the Board of Registration in Medicine concerning Dr. Badgaiyan;

e. Provide the minutes of the Promotions Committee meeting at which the committee as defendants indicate voted to place Dr. Badgaiyan on probation, along with the minutes of any other

-19-

committees who discussed, considered or acted on Dr. Badgaiyan's performance as a participant in the training program (i.e., minutes from all meetings held between October, 1999, and December, 2003;)

f. Provide Dr. Badgaiyan and his counsel with copies of the rules of promotion and probation for members of the residency program;

g. Expunge all groundless negative information from Dr. Badgaiyan's record of participation in the program or any and all other records they may maintain concerning Dr. Badgaiyan;

h. Act affirmatively to correct any false or misleading impressions their words and/or actions have created with any and all persons with whom they have discussed Dr. Badgaiyan or with whom they have interacted relating to him;

3. Following a hearing on the merits, enter its findings of fact that defendants discriminated against Dr. Badgaiyan and harassed him on account of his race and national origin; and retaliated against him for seeking to enforce his right to be free from discrimination and harassment in violation of Federal law, 42 U.S.C. 2000-e et. Seq.; breached their contract with him; intentionally interfered with an advantageous business relationship he had; intentionally inflicted emotional distress upon him; and defamed him;

4. Thereafter, enter its judgment against defendants

calling on them to respond in damages for the injuries they have caused him;

5.    Enter its further order that defendants pay Dr. Badgaiyan's reasonable costs and attorney fees;

6.    Grant such other relief as to the court may appear meet and just.


PLAINTIFF CLAIMS HIS RIGHT TO TRIAL BY JURY ON ALL COUNTS SO TRIABLE.


RESPECTFULLY SUBMITTED,
RAJENDRA BADGAIYAN, M.D.
BY HIS ATTORNEY
PAUL H. MERRY, ESQ.

Paul H. Merry, Esq.
Law Office of Paul H. Merry, Esq.
Of Counsel, Messing & Rudavsky

DATE:                                    44 School Street 10th Floor
                                         Boston, MA 02108
                                         BBO # 343580
                                         617-720-2400

-21-