UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| RAJENDRA D. BADGAIYAN, M.D., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| ANTHONY J. PRINCIPI, Secretary, | ) |
| Department of Veterans' Affairs; | ) |
| President and Fellows of | ) |
| HARVARD COLLEGE; | ) |
| and GRACE J. MUSHRUSH, M.D., | ) |
| | ) |
| | ) |
| Defendants. | ) |
| | ) |

## AMENDED COMPLAINT AND JURY CLAIM

### I. INTRODUCTION

1.    Dr. Rajendra D. Badgaiyan brings this action seeking injunctive relief and compensatory damages against defendants Anthony J. Principi as he is Secretary of the United States Department of Veterans Affairs; the President and Fellows of Harvard College; and Dr. Grace J. Mushrush, as a remedy for their discrimination against him on account of his race, and national origin (South Asian/Indian); for their retaliation against him; and for other causes. He seeks orders requiring defendants to cease and desist from their discriminatory and retaliatory practices based on his race and national origin; and to correct

to the extent possible the damage done by their past discrimination.

## II. JURISDICTION

2.    Jurisdiction over the parties and subject matter of this action is conferred upon this Court by 42 U.S.C. 2000e-5(f).

## III. PARTIES

3.    Plaintiff Rajendra D. Badgaiyan, M.D., ("Dr. Badgaiyan") is a natural person with an address of 122A Sycamore Street, Somerville, Massachusetts, 02145.  He is a native of the South Asian nation of India and was born and raised there.

4.    Defendant Anthony J. Principi ("Secretary Principi") is Secretary of the Department of Veterans Affairs of the United States (the "V.A.").  The Department of Veterans Affairs is an agency of the government of the United States of America.  It operates a number of facilities to serve the needs of veterans of military service, including a hospital which provides psychiatric care (among other services) to veterans from a location at 940 Belmont Street, Brockton, Massachusetts ("the facility".)

5.    Defendant President and Fellows of Harvard College ("Harvard") are a corporation organized on information and belief under the laws of the Commonwealth with a customary and usual place of business at University Hall, 1350 Massachusetts Avenue,

-2-

Cambridge, Massachusetts 02138.  Harvard grants degrees in, among

other subjects, medicine; and operates residency training

programs in a variety of medical specialties, including

psychiatry. One such program it operates at defendant Veterans

Administration's Brockton facility.

6.    Defendant Grace J. Mushrush, M.D., ("Dr. Mushrush") is

a natural person with a business address of 940 Belmont Street,

(116A7), Brockton, MA 02301.  She is also the director of the

Harvard South Shore Psychiatry Residency Program (the

"Program.").

## IV. FACTS

7.    Dr. Badgaiyan is an accomplished student of medicine

and psychology with a number of distinctions already to his

credit at this early point in his career.

8.    Dr. Badgaiyan's research has been recognized

internationally and is included in courses taught at several

universities, including Harvard. He has published some sixty

articles on issues in his particular areas of expertise

(neuroscience), some sixteen during his residency training alone.

9.    He received a prize as the best resident researcher in

psychiatry at Harvard.  In his native India, he received a

national prize for his work in the area of physiology and allied

sciences.

10.   Dr. Badgaiyan is also distinguished by his appointment

-3-

as an assistant professor on the Harvard Medical School faculty also at this early stage of his career. He also served on the advisory panel of the National Science Foundation and serves as a member of the editorial boards of two prominent international professional journals in his area of specialization.

11.     In addition to the M.D. degree, Dr. Badgaiyan holds the M.B.,B.S. degrees from Gandhi Medical College; and the M.A. Degree in psychology from Bhopal University in India.

12.     Among various academic positions Dr. Badgaiyan has held are Instructor and Clinical Fellow at Harvard Medical School; Research Associate at Harvard University; Postdoctoral Fellow at the University of Pittsburgh; Research Associate at the University of Oregon; Reader (associate professor) at Banaras Hindu University, one of India's most prominent universities; and Lecturer at Medical College, Rohtak, India.

13.     Dr. Badgaiyan was admitted to the United States as an alien with extraordinary abilities, and has consistently received strong ratings by his supervisors.

14.     After his years of study, research and teaching, Dr. Badgaiyan decided in 1999 to seek to enter the practice of medicine in the specialty of psychiatry, and enrolled in defendant Harvard's South Shore Psychiatry Residency Training Program (the "program"), operated at the facility in cooperation with defendant Secretary Principi's Department of Veterans

-4-

Affairs.

15.   Initially, Dr. Badgaiyan received outstanding or good evaluations for most of his clinical work in the South Shore psychiatry residency training program.

16.   He was ranked first in his class on the national evaluation of clinical competency, "PRITE" and in fact scored higher than many established professionals.

17.   Within a short time after he enrolled and began participating in instruction in the program, however, Dr. Badgaiyan became aware of certain attitudes demonstrated by the program's director, defendant Dr. Mushrush.

18.   Among his observations were anti-South-Asian remarks made by defendant Dr. Mushrush, including disparaging remarks concerning physicians of Indian extraction and about the quality of medical institutions and medical education in India.

19.   Defendant Dr. Mushrush became particularly critical of Dr. Badgaiyan, seemingly directing particular unwarranted criticism, derogatory remarks and disadvantageous treatment towards him as contrasted to his fellow residents who were not of South Asian descent.

20.   Among the false statements defendant Dr. Mushrush circulated about Dr. Badgaiyan were assertions that he is a poor physician; that he is not interested in the practice of psychiatry; that he told supervisors he preferred not to be

-5-

assigned to their rotations; that he absented himself during part of the program to travel to India; that he did not work on Fridays; and other like comments.

21.    Among the negative acts Dr. Mushrush committed was requiring Dr. Badgaiyan alone among his fellow residents to repeat training rotations he had already passed with a "good" or "outstanding" grade, on information and belief an unprecedented action for this program.

22.    Other acts defendant Dr. Mushrush committed included manipulating Dr. Badgaiyan's training schedule needlessly such that Dr. Badgaiyan was compelled to spend six months to complete certain components of training which could have been completed in one or two months.

23.    Dr. Mushrush also, on information and belief, initiated contacts with physicians not associated with the program to make derogatory remarks about Dr. Badgaiyan.

24.    Additionally, defendant Dr. Mushrush obstructed Dr. Badgaiyan's growth as a physician and student of medicine by denying him access to evaluations of his performance prepared by his supervisors and preceptors in the rotations he participated in the program, thus preventing him from benefitting from the comments they contained.

25.    Despite a consistent record of performance above average for program participants, defendant Dr. Mushrush singled

-6-

Dr. Badgaiyan out by requiring him to repeat clinical rotations he had already successfully passed, without providing a reason for this action.

26. Defendant Dr. Mushrush has also on information and belief intervened with Dr. Badgaiyan's direct supervisors, providing inaccurate adverse comments and indicating to them they should downgrade Dr. Badgaiyan's performance.

27. Defendant Dr. Mushrush asked Dr. Badgaiyan alone among program participants to complete the non-education-related task of developing an internet "web site" for the program; and on information and belief indicated his graduation would be delayed until he completed this non-psychiatry-related chore.

28. Less significant but painful nevertheless, defendant Dr. Mushrush acted in ways that prevented Dr. Badgaiyan from receiving his diploma at the graduation ceremony for his group of residents (the only resident in the history of the program to be so stigmatized).

29. Other medical professionals of Indian and South Asian extraction involved in the program or otherwise engaged at the facility also recounted to Dr. Badgaiyan their own observations of negative remarks concerning South Asians as well.

30. Additionally, defendants Harvard and Secretary Principi knew or should have known of these offensive, illegal discriminatory statements and actions of defendant Dr. Mushrush.

-7-

31.   The groundless negative statements made by defendant Dr. Mushrush have damaged Dr. Badgaiyan's reputation and career; and are continuing to do him harm.

32.   Perhaps the most tangible negative effect has been defendant Dr. Mushrush' having provided false and misleading information concerning Dr. Badgaiyan to the Commonwealth of Massachusetts Board of Registration in Medicine (the "Board"), which licenses physicians in Massachusetts.

33.   Among these materials on information and belief was an assertion concerning a "probation" status defendant Dr. Mushrush (improperly) claimed Dr. Badgaiyan was in but which on information and belief was never formally approved under the rules covering probation, including notice to Dr. Badgaiyan and an opportunity to be heard; or a vote by the Promotions Committee of the program, which on information and belief has ultimate authority over participant status.

34.   Additionally, defendant Dr. Mushrush on information and belief provided complaints of dubious provenance and validity to the Board without providing Dr. Badgaiyan an opportunity to review or comment on them as on information and belief required under defendant Harvard's rules covering disciplinary action against a medical resident.

35.   Defendant Dr. Mushrush has also delayed for some thirty (30) days signing forms necessary for Dr. Badgaiyan's

license application to be processed by the Massachusetts Board of Registration in Medicine.

36.    These actions of defendant Dr. Mushrush have delayed, and may prevent, Dr. Badgaiyan being licensed to practice medicine, which, should it occur, will have a serious negative economic and emotional impact on him and his family.

37.    Dr. Badgaiyan has consistently protested defendant Dr. Mushrush' discriminatory conduct, objecting first to her, and subsequently to others involved in leadership in the program.

38.    Dr. Badgaiyan's protests, however, had little or no effect; and the racial hostility and negativity continued.

39.    The continuous, pervasive negative remarks and responses against him had a foreseeable effect on Dr. Badgaiyan and severely impacted his academic and personal life adversely. He soon required medical treatment for life-threatening hypertension; and for depression.  This negative treatment has also had a serious negative financial impact on Dr. Badgaiyan.

40.    Defendant Dr. Mushrush has continued to act in negative and damaging ways towards Dr. Badgaiyan from the time of her first negative remarks and conduct towards him up through the date of filing of this Complaint.

41.    Finally, with his completion of the program needlessly delayed for nearly three months by defendant Dr. Mushrush' actions, and frustrated that his efforts to work within the

institutions of defendants Harvard and Secretary Principi to achieve relief, Dr. Badgaiyan filed a formal complaint with defendant Secretary Principi's equal opportunity office.

42.    When that office rejected his complaint and defendant Dr. Mushrush failed to respond to additional efforts to redress the problems through counsel, he brought the present action.

## V. CAUSES OF ACTION

COUNT I:   DISCRIMINATION ON ACCOUNT OF RACE AND NATIONAL ORIGIN

43.    Dr. Badgaiyan hereby realleges and incorporates herein all allegations contained in foregoing paragraphs of this Complaint as if fully set out herein.

44.    Federal law, 42 U.S.C. §2000e-2(a),(d), prohibits discrimination in the terms and conditions of employment and in training, in on account of an individual's race, color or national origin.

45.    Defendant Dr. Mushrush behaved in a discriminatory manner towards Dr. Badgaiyan by making negative statements about South Asian physicians and their training, by delaying and interfering in his completion of his program, by withholding from him his performance evaluations, by intervening with Dr. Badgaiyan's immediate training physicians in an effort to persuade them to downgrade his performance evaluations, and by providing false and inaccurate information to the Massachusetts

-10-

Board of Registration in Medicine.

46.   By acting in a discriminatory manner in her treatment of Dr. Badgaiyan as a member of the program, defendant Dr. Mushrush has violated federal law.

47.   By failing to take effective action to halt defendant Dr. Mushrush discriminatory conduct towards Dr. Badgaiyan, of which they knew or should have known, defendants Secretary Principi and Harvard have violated federal law.

48.   Discriminatory conduct by defendant Dr. Mushrush has also on information and belief damaged his reputation as a psychiatrist and led to the withdrawal of an offer of an additional faculty position at Harvard Medical School.

49.   Dr. Badgaiyan has suffered material and substantial injury and damage as a direct and proximate result of defendants' illegal discrimination against him.

COUNT II: HOSTILE ENVIRONMENT RACIAL HARASSMENT

50.   Dr. Badgaiyan hereby realleges and incorporates herein all allegations contained in all foregoing paragraphs of this Complaint as if fully set out herein.

51.   Federal law, 42 U.S.C. §2000e-2(a),(d), prohibits discrimination in the terms and conditions of employment and in training, in on account of an individual's race, color or national origin.

52.   Dr. Badgaiyan was subjected to discrimination by means

-11-

of defendants' creation of a racially hostile environment in the program.

53.    The racially hostile environment arose on account of defendant Dr. Mushrush' derogatory and negative comments and statements concerning South Asian physicians, medical institutions, and medical training, of which defendants Secretary Principi and Harvard knew or should have known.

54.    The racially derogatory and negative comments made by defendant Dr. Mushrush were severe, pervasive and unwelcome to the degree that it created an abusive employment environment affecting terms and conditions of Dr. Badgaiyan's training.

55.    Defendants knew or should have known of the extent and degree of the harassment experienced by Dr. Badgaiyan and others under its instruction and in its employ, and its effect on them, yet failed to take remedial action.

56.    By permitting, and failing to eliminate, correct or remedy, a work environment hostile to persons of Indian and South Asian extraction, defendants discriminated against Dr. Badgaiyan in violation of 42 U.S.C. 2000-e et. Seq.

57.    Dr. Badgaiyan has suffered material and substantial injury and damage as a direct and proximate result of defendants' illegal discrimination against him.

COUNT III: RETALIATION

58.    Dr. Badgaiyan hereby realleges and incorporates herein

-12-

all allegations contained in foregoing paragraphs of this
Complaint as if fully set out herein.

59.    Federal law prohibits employers and trainers from
taking negative action or otherwise retaliating against persons
who have asserted rights guaranteed them by the federal law
prohibits retaliation against persons for engaging in activities
protected by that statute, or for seeking to prevent actions
prohibited under the statute, or for aiding and supporting others
in asserting their rights as guaranteed by that statute., see 42
U.S.C. 2000e-3(a).

60.    After Dr. Badgaiyan filed a formal internal Equal
Employment Opportunity complaint with defendant Secretary
Principi's institution, Dr. Mushrush continued to act negatively
towards him.

61.    More specifically, when Dr. Badgaiyan presented
defendant Dr. Mushrush with his application for a physician's
license from the Board, Dr. Mushrush failed and refused for a
substantial period of time to confirm his participation in the
program, as required by the application; and on information and
belief responded with erroneous negative information.

62.    When Dr. Badgaiyan, frustrated by defendant Dr.
Mushrush' failure to act on his application, subsequently
presented an application for a limited license, approval of which
can be completed more quickly, defendant Dr. Mushrush again

-13-

failed and refused to act on the limited license application for a substantial period of time.

63.    As a result of defendant Dr. Mushrush' failure to act on Dr. Badgaiyan's applications, Dr. Badgaiyan will in all likelihood be denied a fellowship for further study, which fellowship is contingent on his holding a license as a physician.

64.    Dr. Badgaiyan engaged in a protected activity in connection with his employment and training when he first protested Dr. Mushrush' negative statements about and conduct towards him; and later filed a formal internal complaint with defendant Secretary Principi's institution to object to defendant Dr. Mushrush' actions against him.

65.    By failing to complete the license applications presented to her by Dr. Badgaiyan following his filing of a formal discrimination complaint against her, defendant Dr. Mushrush retaliated against Dr. Badgaiyan in violation of federal law 42 U.S.C. 2000-e.

66.    Dr. Badgaiyan has suffered material and substantial injury and damage as a direct and proximate result of defendant's illegal retaliation against him.

## COUNT IV BREACH OF CONTRACT BY DEFENDANTS

67.    Dr. Badgaiyan hereby realleges and incorporates herein all allegations contained in foregoing paragraphs of this Complaint as if fully set out herein.

-14-

68. On information and belief, defendants Secretary Principi and Harvard have adopted rules and regulations regarding conduct which set out policies covering how participants in the program should conduct themselves and, among other subjects, appropriate practices for how participants in training programs should be treated, including how such participants should be informed of their progress and performance in those programs; and how disciplinary action should be taken against a participant.

69. On information and belief, these rules provide that participant performance evaluations be made available to them at least twice per year so they may benefit from their evaluators' comments in seeking to improve their work. (See, ACGME Program Requirements IV Internal Evaluation, Section A.2.)

70. As a condition of his participation in the program, Dr. Badgaiyan was expected to obey these rules of conduct.

71. The rules of conduct and regulations concerning how participants in the program were to conduct themselves and how they were to be informed concerning their performance imposed obligations of a contractual nature on defendants.

72. By failing and refusing, in Dr. Badgaiyan's case, to comply with the regulations, guidelines and rules they had adopted concerning how participants in the program should conduct themselves and how they should be informed of their progress, defendants violated their contractual obligations to Dr.

-15-

Badgaiyan.

73.    By failing to act in accordance with the policies and guidelines for informing program participants of their progress in the program, defendants breached their contract with Dr. Badgaiyan.

74.    Dr. Badgaiyan was materially and substantially damaged and injured by defendants' breach of their contract with him.

## COUNT V: INTERFERENCE WITH ADVANTAGEOUS RELATIONS

75.    Dr. Badgaiyan hereby realleges and incorporates herein all allegations contained in foregoing paragraphs of this Complaint as if fully set out herein.

76.    Dr. Badgaiyan was an experienced, established student of medicine and neuroscience when he entered the program, and defendant Dr. Mushrush knew of his status.

77.    Dr. Badgaiyan had been seeking further opportunities to study and to put his medical expertise in service in ways that would produce income for him and his family, and defendant Dr. Mushrush knew or should have known this.

78.    In the second half of calendar year 2004, Dr. Badgaiyan had won a fellowship for further study in a specialty he had chosen to pursue in part because of the obstacles placed in his path by defendant Dr. Mushrush, which fellowship would have provided income for the support of him and his family, and

-16-

defendant Dr. Mushrush knew or should have known of this.

79.   Without a license to practice medicine, for which he had applied and asked for Dr. Mushrush' endorsement, Dr. Badgaiyan would lose his fellowship and with it his and his family's financial support for the coming months, and defendant Dr. Mushrush knew or should have known of this.

80.   By failing and refusing to act timely on his applications for either a full license, or a limited license, to practice medicine, defendant Dr. Mushrush interfered in the advantageous relationship Dr. Badgaiyan had with the provider of the fellowship he had won.

81.   Dr. Badgaiyan was materially and substantially damaged and injured by defendant's intentional interference in the advantageous relationship he enjoyed with the provider of the fellowship he won.

COUNT VI: DEFAMATION

82.   Dr. Badgaiyan hereby realleges and incorporates herein all allegations contained in foregoing paragraphs of this Complaint as if fully set out herein.

83.   Within several months of Dr. Badgaiyan's entering the program, defendant Dr. Mushrush communicated false and derogatory information about Dr. Badgaiyan's performance.

84.   Prior to the communication by defendant Dr. Mushrush of false and derogatory allegations concerning Dr. Badgaiyan's

-17-

capacities as a physician and his performance in training to Dr.
Badgaiyan's supervisors and colleagues, Dr. Badgaiyan enjoyed a
strong, positive reputation among colleagues, peers and co-
workers in the medical community.

85.    By knowingly and intentionally communicating false
allegations about Dr. Badgaiyan to others in the medical
community, defendant Dr. Mushrush published damaging information
concerning Dr. Badgaiyan to a significant part of the medical
community of which he is a part.

86.    The false allegations by defendant Dr. Mushrush were
communicated with malice in a conscious and intentional effort to
damage Dr. Badgaiyan's strong, positive reputation in the medical
community without lawful basis.

87.    Dr. Badgaiyan was materially and substantially damaged
and injured as a direct and proximate result of defendant Dr.
Mushrush' communication of the false and derogatory information
about him.

## COUNT VII: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

88.    Dr. Badgaiyan hereby realleges and incorporates herein
all allegations contained in the foregoing paragraphs of this
Complaint as if fully set out herein.

89.    Defendant Dr. Mushrush knew or should have known of Dr.
Badgaiyan's past success as a student of medicine and

-18-

neuroscience, and of the importance of reputation in the medical field.

90.   Defendant Dr. Mushrush knew or should have known that her frequent unwarranted negative comments about, and conduct towards, Dr. Badgaiyan would have a severe impact upon him emotionally.

91.   Knowing this, and in the face of Dr. Badgaiyan's protests both formal and informal, defendant Dr. Mushrush continued her pattern of making inaccurate and false negative comments and behavior towards Dr. Badgaiyan.

92.   These acts of defendant Dr. Mushrush were beyond the scope of her function as an employee of defendants Secretary Principi and Harvard; and she was not acting in the interests of those defendants when she made these inaccurate and false statements and performed the other acts set out herein.

93.   These knowing actions and false and inaccurate statements of the defendant Dr. Mushrush are extreme and outrageous and beyond all bounds of decency; and are utterly intolerable in a civilized community.

94.   Defendant Dr. Mushrush knew or should have known that her statements and actions would cause Dr. Badgaiyan emotional distress, particularly in light of her knowledge of Dr. Badgaiyan's vulnerability to negative comments as a student of medicine.

-19-

95.   Defendant Dr. Mushrush breached her duty of care in the way in which she continued making unwarranted and inaccurate critical and negative remarks about Dr. Badgaiyan.

96.   A reasonable person in Dr. Badgaiyan's position would have experienced similar emotional distress to that experienced by Dr. Badgaiyan.

97.   Dr. Badgaiyan was materially and substantially damaged and injured as a direct and proximate result of defendant Dr. Mushrush' infliction of emotional distress upon him.

## VI. RELIEF

WHEREFORE YOUR PLAINTIFF RAJENDRA D. BADGAIYAN, M.D., hereby respectfully requests that this Honorable Court:

1.   Issue its Order for Notice calling on defendants to appear and show cause why its order should not enter against them requiring them to:

a.   Forthwith cease and desist from uttering false, unwarranted and inaccurate statements concerning Dr. Badgaiyan; and

b.   Forthwith take all necessary and appropriate steps to assure that the Commonwealth of Massachusetts Board of Registration in Medicine is provided accurate information about his performance during residency training and that all inaccurate and false information provided is withdrawn from them, again

-20-

without repeating utterances unwarranted and inaccurate false
negative and critical statements about him and his qualifications
for the practice of medicine;

2.    Following hearing, enter its orders requiring
defendants to:

a.   Forthwith cease and desist from uttering stating, or
otherwise disseminating any false, deleterious, unwarranted or
inaccurate statements concerning Dr. Badgaiyan; and

b.   Forthwith take all necessary and appropriate steps to
assure that the Commonwealth of Massachusetts Board of
Registration in Medicine is provided accurate information about
his performance during residency training and that all inaccurate
and false information provided is withdrawn from them, again
without repeating utterances unwarranted and inaccurate false
negative and critical statements about him and his qualifications
for the practice of medicine;

c.   Provide Dr. Badgaiyan forthwith with copies of all
evaluations bearing on his participation in the residency
training program they administer;

d.   Withdraw forthwith any and all wrongful deleterious
matter you have provided the Board of Registration in Medicine
concerning Dr. Badgaiyan;

e.   Provide the minutes of the Promotions Committee meeting
at which the committee as defendants indicate voted to place Dr.

Badgaiyan on probation, along with the minutes of any other committees who discussed, considered or acted on Dr. Badgaiyan's performance as a participant in the training program (i.e., minutes from all meetings held between October, 1999, and December, 2003;)

f. Provide Dr. Badgaiyan and his counsel with copies of the rules of promotion and probation for members of the residency program;

g. Expunge all groundless negative information from Dr. Badgaiyan's record of participation in the program or any and all other records they may maintain concerning Dr. Badgaiyan;

h. Act affirmatively to correct any false or misleading impressions their words and/or actions have created with any and all persons with whom they have discussed Dr. Badgaiyan or with whom they have interacted relating to him;

3. Following a hearing on the merits, enter its findings of fact that defendants discriminated against Dr. Badgaiyan and harassed him on account of his race and national origin; and retaliated against him for seeking to enforce his right to be free from discrimination and harassment in violation of Federal law, 42 U.S.C. 2000-e et. Seq.; breached their contract with him; intentionally interfered with an advantageous business relationship he had; intentionally inflicted emotional distress upon him; and defamed him;

-22-

4.   Thereafter, enter its judgment against defendants calling on them to respond in damages for all injuries they have caused him, including such punitive damages as the court may award consistently with the statute;

5.   Enter its further order that defendants pay Dr. Badgaiyan's reasonable costs and attorney fees;

6.   Grant such other relief as to the court may appear meet and just.

PLAINTIFF CLAIMS HIS RIGHT TO TRIAL BY JURY ON ALL COUNTS SO TRIABLE.

RESPECTFULLY SUBMITTED,
RAJENDRA D. BADGAIYAN, M.D.
BY HIS ATTORNEY
PAUL H. MERRY, ESQ.

Paul H. Merry, Esq.
Law Office of Paul H. Merry, Esq.
Of Counsel, Messing & Rudavsky
44 School Street 10th Floor
Boston, MA 02108
BBO # 343580
617-720-2400

DATE: