**UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS**

| |
|---|
| **RAJENDRA D. BADGAIYAN, M.D.,**<br><br>     **Plaintiff,**<br><br>**v.**<br><br>**ANTHONY J. PRINCIPI, Secretary, Department of Veterans' Affairs; President and Fellows of HARVARD COLLEGE; and Grace J. Mushrush, M.D.,**<br><br>     **Defendants.** |

**Case No. 04-12031 JLT**

## DEFENDANT PRESIDENT AND FELLOWS OF HARVARD COLLEGE'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT PURSUANT TO FED. R. CIV. P. 56(c)

Defendant President and Fellows of Harvard College ("Harvard University" or

"Harvard") moves for summary judgment as to Counts I, II, III, V, VI, and VII[1] of the Plaintiff's

Amended Complaint and Demand for Jury Trial,[2] pursuant to Fed. R. Civ. P. 56(c) and

L.R.D.Mass. 56.1, because the undisputed material facts demonstrate that the Plaintiff did not

meet the prerequisites to sue under Title VII; Harvard was not responsible for the actions of his

supervisor; Harvard's actions were in all respects lawful; and Plaintiff cannot recover under any

theory pled in the Complaint.

Count I (discrimination), Count II (hostile environment) and Count III (retaliation) must

be dismissed because the Plaintiff failed to file an administrative charge with the U.S. Equal

Employment Opportunity Commission ("EEOC") against Harvard University and thus exhaust

the statutory prerequisites to filing suit in federal court under Title VII.  42 U.S.C. 2000e-5

---

[1] On October 26, 2005, the Court dismissed Count IV of the complaint against Harvard University pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief could be granted.

[2] References to the Plaintiff's Amended Complaint will appear as "(Pl. Am. Compl ¶)" or as the "Complaint ¶." References to Defendant's Statement of Undisputed Facts will appear as "(facts   )."

(1994).  Plaintiff has proffered no reason that exempts him from this requirement.  In addition,

judgment must be entered for Harvard on Counts I, II and III because the Plaintiff has not created

a genuine issue as to any material fact related to his discrimination and retaliation claims.

Similarly, Harvard is entitled to judgment as a matter of law as to Counts V (interference

with advantageous relations), VI (defamation) and VII (infliction of emotional distress) because

Massachusetts workers' compensation law provides the exclusive remedy in private employment

for workplace injuries.  Also, Harvard is not liable as to Count VII because the Plaintiff alleges

that the tortfeasor was acting "beyond the scope" of her employment. (Pl. Am. Compl. ¶92).

**Factual Background**

The Plaintiff is a former medical resident who attended and completed the Harvard South

Shore Psychiatric Residency Training Program (the "South Shore VA Program" or the

"Program"), which is operated by the U.S. Department of Veterans' Affairs (the "VA"). (facts 1,

5, 6). Harvard Medical School had an affiliation agreement with the VA through which

individuals who receive residency training and supervision at VA facilities also receive academic

appointments from Harvard Medical School. (facts 5, 8).

The Program's residency training consists of four years of post-graduate, practical

training consisting of dozens of mandatory "rotations," in which trainees are supervised at VA or

other medical facilities by attending physicians or "preceptors." (facts 10, 11).

Despite more than a decade of experience practicing medicine in India, the Plaintiff had

significant performance problems in the Program.  Several supervisors gave the Plaintiff failing

evaluations in some rotations, identified unexcused absences and uncooperativeness, and staff at

McLean Hospital went so far as to refuse to allow Plaintiff to repeat a rotation there because of

his negative attitude. (facts 34-50).  Members of the Program's Promotions Committee also

supervised the Plaintiff in rotations and reported that he mismanaged a patient, projected blame

for his inadequacies and, in one case, a supervisor suggested that he lied. (facts 38-40).  The

Plaintiff failed an oral examination at the end of his second year and the Program's director, Dr.

Grace Mushrush, notified him in an email message that for this and other reasons, he was being

placed on probation.  (facts 44). A year later, Drs. Swett and McCarley (who were Dr.

Mushrush's superiors) evaluated the Plaintiff's performance with several of his supervisors and

decided to require him to do remedial work before graduating. (facts 48-50).  The Plaintiff does

not contend that either McCarley or Swett discriminated against him. (facts 54).

Plaintiff claims that during a three-year period in the Program, from 1999 to 2003, he

experienced discrimination at the hands of Dr. Mushrush.[3]  Over the course of time, his

allegations have constantly changed;  he now contends that Dr. Mushrush made a handful of

negative statements about South Asian physicians and their training (facts 65, 66, 69, 70, 73);

improperly delayed his completion of the Program (facts  50); improperly intervened with his

supervisors to persuade them to downgrade his performance; made false statements to a licensing

agency regarding Plaintiff's probation; and unduly delayed preparation of a recommendation on

his behalf.

During most of his residency, the Plaintiff also worked at Harvard or at Harvard-affiliated

entities unrelated to the Program, apparently without complaint. (facts 18, 24).  The Plaintiff

filed an internal EEO charge of discrimination naming the VA, which the EEOC dismissed

because it was not timely filed. (facts 79, 65, 66).  He did not name Harvard, and Harvard did not

participate in the EEO investigation.  (facts 75-77).   Despite having filed the EEO grievance and

several appeals, the Plaintiff never filed a formal complaint of discrimination with Harvard, and

---

[3] Dr. Mushrush is a VA employee and holds an unpaid faculty appointment with Harvard Medical School, which did not grant her authority to hire or fire.  (facts 21, 22).  The Plaintiff presented no evidence to the contrary.

did not informally complain to it of discrimination at the Program, even after his EEOC claims were dismissed. (facts 64, 69, 70, 75-79).

## I. THERE IS NO MATERIAL ISSUE OF FACT AS TO COUNTS I, II & III BECAUSE THE PLAINTIFF FAILED TO EXHAUST HIS ADMINISTRATIVE REMEDIES BEFORE SUING HARVARD UNDER TITLE VII

A moving party is entitled to summary judgment in its favor if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits if any, show that there is no genuine issue as to any material fact. Fed. R. Civ. P. 56(c). *See National Amusements Inc. v. Town of Dedham,* 43 F.3d 731, 735 (1st Cir. 1995) *cert. denied*, 515 U.S. 1103, and cases cited. When such a showing is made, a non-moving party must do more than "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). The record demonstrates that Plaintiff has raised no such doubts as to his "exhaustion" requirement.

### a.    There is No Disputed Material Issue Of Fact That the Plaintiff Failed to File An EEOC Charge Against Harvard and That His Federal Sector EEO Charge Was Not Filed Timely

Before the Plaintiff can sue a defendant under Title VII in federal court, he must file a timely administrative charge with the EEOC naming that defendant. 42 U.S .C. § 2000e-5(f)(1) (1994). *See McKinnon v. Kwong Wah Restaurant*, 83 F.3d 498, 504 (1st Cir. 1996); *Lipson v. Johnson & Wales University*, 1997 WL576397 at *3 (D. R.I. 1997)(Lovegreen Mag., J). The EEOC charge-filing requirement is a prerequisite to any Title VII suit against a private employer. *See National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 108-109 (2002)("Title 42 U.S.C. § 2000e-5(e)(1) is a charge filing provision that 'specifies with precision' the prerequisites that a plaintiff must satisfy before filing suit.")(*quoting Alexander v. Gardner-Denver Co.,* 415 U.S. 36, 47 (1974)). An EEOC charge must be "sufficiently precise to identify

the parties, and to describe generally the action or practices complained of." 29 C.F.R.

§1601.12(b) (2004).  If the charge does not name a party as a defendant, it must, at minimum,

allege sufficient facts for an inference that the unnamed defendant violated Title VII. *Lipson* at

*3.[4] (facts 75, 76).

There is no dispute that that the Plaintiff did not name Harvard as a party in an EEOC

charge under 42 U.S.C. § 2000e-5(e)(1). (facts 79).  Nor did he identify Harvard or present any

evidence permitting an inference that it violated Title VII.[5] *See* (facts 79); *Badgaiyan v. Principi,*

2004 WL 1494335 (E.E.O.C., EEOC DOC 1A40345 (Off. of Fed. Operations, 2004)).

Furthermore, even if he had referred to Harvard in his EEO case, a mere reference to a private

employer in an untimely filed public sector EEO charge does not satisfy his Title VII exhaustion

requirement.  *Cf.  Lebron-Rios v. U.S. Marshal Service, et al,* 341 F.3d 7, 15-16 (1st Cir. 2003).

The Plaintiff's failure to meet his federal sector EEO timely filing requirement also bars

this suit.  *Jorge v. Rumsfeld*, 404 F.3d 556 (1st Cir. 2005); *See* 29 C.F.R. § 1614.105(a)

(outlining federal sector EEO discrimination complaint procedures); *Lebron-Rios,* 341 F.3d at

15-16 (dismissal without prejudice against private contractor where plaintiff failed to file timely

with EEOC and remanding for consideration of dismissal for failure to exhaust federal sector

EEO procedures); *Pollock v. Chertoff,* 2005 WL 674692 at *4, n. 4 (W.D.N.Y. March 24,

2005)(dicta regarding private-sector defendant where summary judgment was entered for

federal-sector defendant for failure to exhaust federal sector EEO remedies).  The Plaintiff's

failure to contact an EEO counselor within 45 days of the discriminatory incident, resulted in his

---

[4] Courts have gleaned two congressional purposes for the administrative exhaustion requirement: first to give notice to the party being charged, and second "to bring the relevant parties before the EEOC in an effort to secure voluntary compliance with the statute." *Lipson*, at *3.  The mandatory exhaustion requirement has been said "to provide the employer with prompt notice of the claim and to create an opportunity for early conciliation." *Lattimore v. Polaroid Corp.*, 99 F.3d 456, 464 (1st Cir. 1996).

[5] The Plaintiff bears the burden of production and a court may not "assume from the complaint that [the plaintiff] worked for all of the defendant companies." *Fernandez Molinary v. Industrias LaFamosa*, 203 F. Supp. 2d 111, 117 (D. P.R. 2002).

charge being dismissed at the agency level, and he has not met the prerequisite for a Title VII

suit for this reason. *Lebron-Rios,* 341 F.3d at15-16; *Aponte Rodriguez v. U.S. Marshall Service*,

2005 WL 2203166 (D. P.R. 2005) (magistrate report) and cases cited; (facts 79).

> **b.** **The Exceptions Permitting Avoidance Of Title VII's Exhaustion Requirement In Extraordinary Circumstances Are Inapplicable In This Case**

Where a plaintiff fails to meet his Title VII exhaustion requirements, in narrow and

extraordinary circumstances where multiple employers are substantially identical, a plaintiff may

show that he meets one of three equitable exceptions to the exhaustion requirement: substantial

identity between the named and unnamed parties; an agency relationship between them; or that a

party is indispensable under Fed. R. Civ. P. 19.[6] *See Jorge*, 404 F.3d at 565 (equitable relief is

not appropriate unless plaintiff shows he was not at fault), *and see* (facts 97, 98)(Plaintiff's

contradictory and self-serving reasons for not meeting the EEO counselor contact deadline).

Harvard University received no notice of Plaintiff's discrimination charge until this civil

action was instituted.[7] (facts 75-79).  Since it was not given notice, Harvard was deprived of a

meaningful opportunity to respond to or conciliate informally the Plaintiff's claims, the very

purpose of Title VII's administrative requirement. *See Christaldi-Smith v. JDJ, Inc.,* 367 F.

Supp. 2d 756, 763-64 (E.D. Pa. 2005)(plaintiff must produce evidence that the unnamed

defendant actually knew that a charge had been filed with the EEOC).

---

[6] Plaintiff's failure to meet his federal-sector timely filing and exhaustion requirements under 42 U.S.C. § 2000e-15(c)(1) & 16 et seq. also precludes applying any of the exceptions and bars his suit against Harvard.  See the VA's Memorandum In Support of Motion for Summary Judgment as to the Plaintiff's failure to timely exhaust his remedies. *See* 29 C.F.R. § 1614.105(a)(1), *et seq.*

[7] The Third Circuit, which was cited favorably in this Circuit in *McKinnon*, *supra*, requires that the defendant not named in an EEO action to have received "actual notice of the EEOC complaint." *Shafer v. Bd. Of Public Educ*., 903 F.2d 243, 252 (3d Cir. 1990).  Some Courts require evidence that the Plaintiff was not represented by counsel at the time he litigated the EEO claim. *See e.g., Harrington v. Hudson Sheraton Corp.*, 2 F. Supp. 2d 475, 478 (S.D.N.Y. 1998). Here, Dr. Badgaiyan consulted with counsel prior to the EEO process. (facts 78).

### 1. United States Department of Veterans Affairs is Not an Agent of Harvard University, Nor Is Harvard An Indispensable Party

The Plaintiff cannot seriously contend that the "Memorandum of Affiliation" (the

"Agreement") between Harvard Medical School and the VA created an agency relationship since

"[a]n agent is characterized as one who is authorized to act on behalf of the principal, subject to

the principal's control, and who has consented to act in agency capacity." *Romano v. U-Haul

Int'l.,* 233 F.3d 655, 662, fn. 6 (1st Cir. 2001)(*citing* Restatement (Third) of Agency § 1.01

(Tentative draft No. 1 2000)).  There is no fact supporting an inference that Harvard authorized

the VA to act as its agent, that the VA consented to act in an agency capacity, or that it became

subject to Harvard's control.  The nature of the parties' Affiliation Agreement, the myriad

independent VA regulations, and the defendants' distinct nature and roles make such an

inference unreasonable. (facts 1-6, 10).

Harvard is not an indispensable party in this case because complete relief can be accorded

in its absence.  *See American Gen'l Life & Accident Ins. Co. v. Wood*, 429 F.3d 83 (4th Cir.

2005).  Plaintiff has presented no evidence demonstrating that he would be unable to recover

damages and obtain relief regarding his medical license in Harvard's absence.[8]  Fed. R. Civ. P.

19.  Further, he has made no showing that Harvard's status as a non-party would as a "practical

matter impair or impede [the other parties'] ability" to protect their interests. Fed. R. Civ. P. 19.

### 2. Substantial Identity

The record demonstrates that Harvard and VA had distinct and autonomous roles both

---

[8] An analysis of Rule 19(b) appears inappropriate in the present case since four inapplicable factors channel the analysis:  [F]irst to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder. Fed.R.Civ.P. 19(b); *Fernandez & Hnos., Inc. v. Kellogg USA, Inc.,*  440 F.3d 541 (1st Cir. 2006).  Ultimately, a court must determine under Rule 19(b) whether the party is indispensable or whether "in equity and good conscience the action should proceed among the parties before it." Fed. R. Civ. P.19(b).

under the terms of the Agreement and in practice, and did not have "substantial identity."

Harvard was responsible for academic standards and strategic academic planning, while the VA

owned and managed the VA Brockton facility and the Program. (facts 1, 5, 6, 10).  Boston

University Medical School also is affiliated with the Program, a factor that further undercuts the

suggestion that the VA and Harvard Medical School share substantial identity. (facts 5, 8, 9).

The VA's pervasive control of its employees, training records, independent administrative

procedures (including human resources) and its authority under the Affiliation Agreement

renders untenable any inference that the defendants were essentially acting as one. (facts 5, 6).

Furthermore, "substantial identity" is particularly difficult to establish when, as here, the

unnamed party received no actual or constructive notice of the charge. *See Curran v. Portland

Superintending Sch. Comm.,* 435 F. Supp. 1063, 1074 (D. Me. 1977); Lipson at *5; (facts 75-77).

Four additional factors must be considered "in determining if [the plaintiff] may proceed

against parties not named before the EEOC" under the narrow equitable exception to the

exhaustion requirement. *McKinnon,* 83 F.3d at 505; *(quoting Glus v. G.C. Murphy Co.,* 562 F.2d

880, 888 (3rd Cir. 1997)).  These factors include whether the Plaintiff could ascertain Harvard's

role at the time of the EEOC filing (or during the investigation); whether the interests of Harvard

and the VA are similar; the prejudice to Harvard as a result of its exclusion from the

investigation and conciliation process; and whether the Plaintiff demonstrates that Harvard

represented to the Plaintiff that its relationship to him was through the VA.[9] *See Id.*  None of

these factors provide a basis for exempting the Plaintiff from his exhaustion obligation.

Plaintiff knew of Harvard's role in his residency training long before his EEOC filing.  In

fact, the Plaintiff worked elsewhere at Harvard or at Harvard-affiliated entities at the same time

---

[9] *See Christaldi-Smith v. JDJ, Inc.*, 367 F. Supp. 2d. 756 (E.D. Pa. 2005) (proof of actual notice to all unnamed defendants required to proceed) and cases cited.

he was in residency training at the VA. (facts 18).

The evidence indicates that the Plaintiff actively concealed his charge of discrimination from Harvard representatives, and certainly did nothing to bring his charge to its attention. (facts 69, 70). In fact, the Plaintiff sent an email complaining about Dr. Mushrush to Harvard's academic psychiatry chief at the VA, Robert McCarley, stating only that she harbored an "open contempt for research in general, and researchers in particular." (facts 69). In light of his disingenuous and self-contradictory allegations, and longstanding ties to Harvard, Plaintiff cannot plausibly contend then that he could not "ascertain the role of the unnamed party at the time of the EEOC filing." *McKinnon,* 83 F.3d at 505; (*quoting Glus*, 562 F.2d at 888). There is simply no evidence in the record suggesting that Harvard represented that its relationship to the Plaintiff was through the VA.

As noted above in section I. b. 2., *supra*, Harvard has amply demonstrated that its interests in this matter are significantly dissimilar to those of the U. S. Department of Veteran's Affairs so that the Plaintiff should not be permitted to proceed against Harvard without following the statutory requirements of 42 U.S.C. § 2000e-5(e)(1).

Harvard has been prejudiced by having lost forever the opportunity to promptly evaluate, investigate and remedy the Plaintiff's alleged difficulties at the Program, and thereby, has been deprived of the ability to fully defend itself. The notice requirement "ensure[s] that the defendant has notification of the pending proceedings and further[s] the goal of voluntary compliance with Title VII." *McKinnon*, 83 F.3d at 505. As a result, Harvard has suffered disruption, expense and the loss of opportunity to promptly interview witnesses, many of whom have graduated and dispersed, or who can no longer be identified. To allow a blanket reference to the [VA Program] to satisfy the statutory  charge-filing requirement would circumvent the

9

legislative intent to provide notice to each defendant and to bring the relevant parties before the

EEOC in an attempt to obtain voluntary compliance with Title VII. *See Curran,* 435 F. Supp. at

1074.

**II.    EVEN IF HE HAD EXHAUSTED HIS ADMINISTRATIVE REMEDIES AS TO HARVARD, PLANTIFF HAS NOT CREATED A MATERIAL DISPUTE OF FACT THAT HE WAS SUBJECT TO DISCRIMINATION OR RETALIATION UNDER TITLE VII**

Even assuming that the Plaintiff met the statutory exhaustion requirements, his Title VII

claims do not raise a disputed question of material fact.  Because he appears to style a disparate

treatment charge, this case must proceed under the three-step burden shifting framework of

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *St. Mary's Honor Ctr. v. Hicks,* 509

U.S. 502 (1993); *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133 (2000) (and cited

cases).  Although burdens of production shift, it is the Plaintiff who always carries the burden of

persuasion as to his claim of discrimination.[10]  Dr. Badgaiyan has not produced sufficient facts to

make a *prima facie* showing that he suffered discrimination, a hostile work environment or

suffered retaliation; alternatively, even if he has done so, he has failed to make a stage-three

showing that discredits the legitimate bases for Harvard's actions.

To withstand summary judgment, Plaintiff must demonstrate, *inter alia,* that his work

performance met the employer's legitimate expectations. *Fontánez-Núñez v. Janssen Ortho LLC*,

447 F.3d 50 (1st Cir. 2006).  Because the Plaintiff has not produced a scintilla of evidence

weakening the devastating evidence concerning his poor performance and has no evidence of

racial animus among the legion of evaluating supervisors other than the sole alleged

discriminator (Dr. Mushrush), his claims simply cannot succeed. *See Nat'l Amusements, Inc.,*

---

[10] The Plaintiff's vague complaint could permit one to also conclude that he proceeds under a mixed-motive theory. His case is dismissible on this basis as well because he failed to present sufficient evidence of illegal bias, and there is no dispute of material fact that Harvard would have made the same decisions even if the protected characteristic was not taken into account. *Burton v. Town of Littleton,* 426 F.3d 9, 19 (1st Cir. 2005).

*supra*, 43 F.3d at 735.  The nonmovant "may not rest upon the mere allegations or denials of the

[moving] party's pleading," and instead "must set forth specific facts showing that there is a

genuine issue for trial."  Fed. R. Civ. P. 56(e).  If the nonmovant fails to make "a showing

sufficient to establish the existence of an element essential to [his] case, and on which [he] will

bear the burden of proof at trial," *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986), summary

judgment must issue against him.  Thus, "even in employment discrimination cases, 'where

elusive concepts such as motive or intent are at issue,' this standard compels summary judgment

if the non-moving party 'rests merely upon conclusory allegations, improbable inferences, and

unsupported speculation'" as Dr. Badgaiyan has done here. *Feliciano de la Cruz v. El

Conquistador Resort & Country Club*, 218 F.3d 1, 5  (1st Cir. 2000) (*quoting Medina-Munoz v.

R.J. Reynolds Tobacco Co.,* 896 F.2d 5, 8 (1st Cir. 1990)).

      **a.      Plaintiff Has Not Shown That He Was Subject To An Adverse Employment Action, That Harvard Was Responsible For Any Action, That The Legitimate Reasons For Any Actions Taken Are Actually Pretexts For Discrimination and He Cannot Prove Causation.**

Plaintiff claims that he suffered adverse discriminatory employment actions on account

of his race and national origin, however, he has failed to support his contentions, or present

evidence permitting a reasonable fact finder to draw such an inference in his favor.  Many of the

acts upon which his case rests, such as the brief, three-month delay in his graduation date,

statements to the State Board of Registration in Medicine, and a handful of comments he

considered offensive, do not constitute materially adverse actions.  *See Burlington Northern &

Santa Fe Ry. Co. v. White,* \_\_\_ U.S. \_\_\_ 126 S. Ct. 2405, 2415 (2006)(petty slights and

annoyances at work are not adverse actions for retaliation purposes).

Likewise, Plaintiff has also not created a dispute of material fact that Dr. Mushrush was

Harvard's employee and that Harvard is liable for her conduct.[11] Dr. Mushrush was employed

by the VA, not Harvard, she did not report to Harvard, did not have authority to make hiring and

firing decisions on its behalf, and cannot be deemed its employee. *See e.g.*, *Burlington*

*Industries, Inc. v. Ellerth,* 524 U.S. 742, 758 (1998)*; see also, Ward v. Kylander,* 2006

WL2141247 at *3 (Mass. Super. Ct. 2006*); McPherson v. HCA-Healthone,* 202 F. Supp. 2d

1156, 1165 (D. Colo. 2002).  Therefore, his theory of Harvard's liability depends on

demonstrating the existence of a genuine issue of material fact that Harvard had a duty to

supervise and was negligent in its oversight of Dr. Mushrush. *See e.g., Turnbull v. Topeka State*

*Hosp.*, 255 F.3d 1238 (10th Cir. 2001) (plaintiff required to show negligence to establish

employer liability for non-employee Title VII violations).  To do so, he must show both that

Harvard had control over Dr. Mushrush, actual or constructive knowledge of the harassment and

that its remedial responses were inadequate.  As noted above, the Plaintiff concealed the nature

of his claim of discrimination from Harvard.  In light of this duplicative conduct, Harvard could

not have known of the purported harassment.

Plaintiff contends that Dr. Mushrush required him to repeat training rotations that he

says he passed, thereby improperly delaying his graduation.[12]  He cannot support this contention

because numerous other physicians (and a nurse), including Drs. Bolton, Barreira, Osser, Seiffer,

Gurrera, Swett, Muffson, Kiota, Tishler and others criticized his performance, or gave the

Plaintiff poor, failing or negative evaluations.[13] (facts 27-41 ).  It was not Dr. Mushrush alone,

---

[11] He has proceeded under a negligence theory, alleging that defendants "knew or should have known" of Dr. Mushrush's conduct. (See Complaint ¶¶ 47, 55).

[12]Plaintiff now claims that upon accepting him into the Program, in 1999 Dr. Mushrush failed to recognize the Plaintiff's foreign medical school credits, notwithstanding the fact that he had failed his US medical school test (facts 16), and cannot produce evidence that discriminatory bias motivated this decision. A substantial percentage of the Program's residents are south Asian (facts 14), yet Plaintiff produced no statistical evidence of bias regarding its practice in crediting previous training.  His vague, inadmissible evidence that a Canadian resident received some credits for foreign training is inadequate to create an inference of discrimination.

[13] There is no evidence that any of these physicians harbored racial bias, or were influenced by Dr. Mushrush. *See*

but several of her peers and superiors who decided to require the Plaintiff to repeat or complete

rotations for legitimate, non-discriminatory reasons. These included well-documented sub-par

performance, absences from his rotations (facts 24), and poor attitude "that interfered with good

patient care." (facts 29).  Several supervisors suggested that the Plaintiff seemed to "have an

inability to work collaboratively with women: attendings, senior residents and nursing staff."

(facts 27).  The Plaintiff disagrees with these evaluations but he has not controverted them.[14]

There is no evidence in the record to support his outlandish claim that Dr. Mushrush influenced

these and other supervising physicians at the VA and elsewhere to write bad performance

evaluations, and the Plaintiff has all but conceded that this allegation is based on unsupported

suspicions. (facts 50, 51).

    The Plaintiff has repeatedly changed his allegations about precisely what Dr. Mushrush

said.  The comments Plaintiff attributes to her are, in several cases, too ambiguous to support a

conclusion that she harbored discriminatory animus. (facts 64-66, 68-73).  Presently he claims

that over a 3-year period, between January 2000 and December 2003, Dr. Mushrush made

perhaps 5, and no more than 10, negative comments critical of physicians trained in India.  The

purported comments focused on the quality of medical education in India, indicating that

"doctors don't value life, and they don't care about the patients, they are not dedicated to patient

care." (facts 66).[15]  He also claims that on one or two occasions Dr. Mushrush used the term "bad

boy," which he thinks had racial overtones, although he is at a loss to explain why. (Pl. Dep. p.

110); *Cf. Ash v. Tyson Foods Inc.,* __ U.S. __ 126 S. Ct. 1195, 1197 (2006) (use of the term

"boy" alone does not necessarily establish inference of bias, absent context suggesting

---

*e.g.,*(facts 49-54).  In several cases, the Plaintiff has adduced no evidence as to who employed these physicians.
[14] Plaintiff conceded he had difficulty with some supervisors (facts 53), and that he was absent from the Program,
due to illness and teaching commitments, and that "he took several days off" from a rotation. (facts 32, 57-60).
[15] The Plaintiff alleged to the VA that Dr. Mushrush said she, or other physicians, dislike Indians because "they are
smart and confident," an allegation he apparently no longer stands by. (facts 65).

otherwise).  His claims fail because even if his self-contradictory allegations about these

statements somehow demonstrate Dr. Mushrush's racial bias, he has not produced evidence

permitting a fair inference that she controlled or influenced the crucial actions of the other

supervisors, including Drs. Swett, McCarley, Bolton, Osser, Gurrera and Tishler. (facts 33, 39,

40, 46, 50).

Similarly, the Plaintiff has not supported his contention that the non-issuance of his

medical license was materially related to any action for which Harvard allegedly is responsible,

such as supposedly discriminatory evaluations and statements, the accurate report he was on

probation and the purported delay in sending a recommendation to the Commonwealth of

Massachusetts Board of Registration in Medicine (the "Board of Registration" or the "BRM").

The record demonstrates that the BRM conducted an independent investigation, and obtained

information from numerous sources; the BRM knew that Plaintiff suffered from deep and

debilitating depression that had prevented him from working (and which he says caused him to

be too disoriented to file an internal EEO charge). (facts 83-93).  It also received deeply

troubling and highly critical evaluations from several VA and non-VA supervisors and others

suggesting the Plaintiff had serious performance and emotional issues. (facts 27, 29, 30, 33, 34,

35, 37, 39, 40, 46, 50, 90).  Ultimately, the BRM did not grant the Plaintiff's medical license

because he simply refused to participate in a monitoring program it mandated, and to this day, he

has not signed the monitoring contract. (facts 90-93).

Dr. Mushrush accurately and appropriately responded at all times to the BRM and

accurately answered in the affirmative to a Board of Registration query asking if the Plaintiff

was on probation previously; she was likely legally and ethically obligated to report this fact.

(facts 4, 83, 87).   The Plaintiff's disagreement about whether his probation was "official" is

14

immaterial; Dr. Mushrush and others who evaluated the Plaintiff in 2002 concurred that probation was appropriate and Dr. Mushrush so notified him by email. (facts 44). Of course, this is of marginal relevance since the Board of Registration refused to grant the Plaintiff's medical license for another reason: he refused to sign the Behavior Monitoring contract. (facts 93).

The Plaintiff has not supported his claims of discrimination on account of race and national origin, and hostile environment. His contentions to the contrary are undercut by evidence that several VA staff prepared failing evaluations of the Plaintiff, and concurred that the Plaintiff should do remedial work. (facts 46, 50, 51, 54). For instance, it was Dr. Swett's opinion, after discussing the Plaintiff with several supervisors, that "he was having problems in his clinical-residency performance and attitude . . . he was not passing." (facts 52).

Dr. Badgaiyan has alleged that he was treated less favorably than similarly situated non-south Asian employees.[16] However, his case is based on an extremely limited and unsuccessful effort to identify required "meaningful comparators," which consisted of identifying three residents who Plaintiff claims complained to him that they were having problems. Based on these conversations, a mysteriously redacted letter and nothing more, the Plaintiff concludes the comparators should have been more negatively evaluated, although he produced no other information about their performance and has not seen their evaluations. (facts 74). Plaintiff also relies on a conversation with one supervisor who told the Plaintiff that his impression was that the Plaintiff was above average. (facts 74). As a result, Plaintiff has utterly failed to show that any employees he identified are "directly comparable to him in all material aspects." *Grayson v.*

---

[16] Plaintiff "must present enough evidence to permit a finding that there was differential treatment in an employment action and that the adverse employment decision was caused at least in part by a forbidden type of bias." *Hillstrom v. Best Western TLC Hotel,* 354 F.3d 27, 30-31 (1st Cir. 2003)*; see also Desert Palace,* 539 U.S. 101 (2003) (holding that the plaintiff must "present sufficient evidence for a reasonable jury to conclude, by a preponderance of the evidence, that race . . . or national origin was a motivating factor for any employment practice") (internal marks omitted).

*O'Neill*, 308 F.3d 808, 819 (7th Cir. 2002).

The Plaintiff has not offered any credible facts undercutting the defendants' legitimate

basis for its actions, and there is "no whiff in the record of a conspiracy to set up the plaintiff, nor

would that theory be in the least bit credible on the facts here. The evidence does not permit a

finding of discriminatory motivation." *Burton v. Town of Littleton,* 426 F.3d 9, 20 (1st Cir.

2005).  Dr. Badgaiyan's "mere conclusory suspicion" regarding the reasons for his poor

evaluations and probation, is no substitute for specific evidence that discrimination was involved.

*Quinones v. Buick*,  436 F.3d 284 (1st Cir. 2006); *See Johnson v. Nordstrom, Inc.,* 260 F.3d 727,

733 (7th Cir. 2001) (observing that plaintiff's subjective belief that she is being discriminated

against "does not, without more, demonstrate pretext").  Harvard is "entitled to judgment as a

matter of law if the record conclusively revealed some . . . nondiscriminatory reason for the

employer's decision, or if the plaintiff [has] created only a weak issue of fact as to whether the

employer's reason was untrue and there was abundant and uncontroverted independent evidence

that no discrimination had occurred." *Reeves*, 530 U.S. at 148.

Plaintiff's self-contradictory, unsupported claims about his health condition do not create

a material dispute of fact that he suffered tangible harm or that his employment was its cause.

The BRM's decision to decline to grant Plaintiff's medical license, not the allegations that form

the basis for this complaint, caused the only tangible harm that Plaintiff has proven he suffered

(facts 93); this dooms his claim.

### b.    Claim of Retaliation

To establish his *prima facie* case of retaliation under 42 U.S.C. § 2000e-3(a), the

Plaintiff must show that (1) he engaged in protected activity; (2) he suffered an adverse

employment action after or contemporaneous with such activity; and (3) there existed a causal

link between the protected activity and the adverse action. *Burlington Northern,* 126 S.Ct. 2405*;*

*Benoit v. Technical Manufacturing Corp*., 331 F.3d 166 (1st Cir. 2003); *Wyatt v. City of Boston,*

35 F.3d 13, 15 (1st Cir. 1994).  The Plaintiff has failed to produce sufficient evidence as to the

two latter elements.  First, the sum and substance of the Plaintiff's retaliation claim is that in his

April 2004 application for licensure, Dr. Mushrush mentioned that he had been placed on

probation in retaliation for filing an internal EEO complaint in September 2002. (facts 94-96,

45).  The Plaintiff had in fact been placed on probation in 2001 (facts 44), and there is no basis to

suggest that this truthful report to the BRM constituted an adverse employment action.

Second, the nearly two year period between the Plaintiff's protected activity, a September

2002 grievance to the VA EEO official, and the alleged retaliatory action in 2004, is too remote

to permit an inference of a causal connection between the two acts. *Benoit*, 331 F.3d at 175,

*citing Dressler v. Daniel,* 315 F.3d 75, 80 (1st Cir. 2003) ("[T]he inference of a causal

connection becomes more tenuous with time."); *Mesnick v. General Elec. Co.,* 950 F.2d 816, 828

(1st Cir. 1991)(a nine-month period between the protected conduct and adverse action suggested

the absence of any causal connection).  Notably, during the intervening period, Dr. Mushrush

twice recommended the Plaintiff for limited licensure. (facts 83).  The Plaintiff all but conceded

at his deposition that he has no evidence of retaliation, noting that the only basis for his claim is

that: "I don't see any other reason why she mentioned probation." (facts 95).

      **c.**     **Hostile Work Environment**

The essence of a Title VII hostile work environment claim requires ". . . plaintiff to prove

unlawful discrimination by showing that `the workplace is permeated with discriminatory

intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of

the victim's employment and create an abusive working environment.'" *O'Rourke v. City of*

17

*Providence,* 235 F.3d 713, 728 (1st Cir.2001)(*quoting Harris v. Forklift Sys.,* 510 U.S. 17, 21

(1993)).  Plaintiff's allegations of a handful of inappropriate comments will not suffice. *See*

*DeNovellis v. Shalala*, 124 F.3d 298 (1st Cir. 1997); *Meritor Savings Bank, FSB v. Vinson*, 477

U.S. 57, 67 (1986).

The Plaintiff's hostile environment claim rests on his allegations that Dr. Mushrush made

5-10 comments concerning Indian medical training over the course of 3 years, and the

disciplinary actions, which he stubbornly attributes to her, despite overwhelming evidence to the

contrary.  However, even comments that are crude, offensive or humiliating, unless extremely

severe or pervasive, are not themselves sufficient to establish the "discriminatory changes in the

terms and conditions of employment" required to establish a hostile environment claim.

*Pomales v. Celulares Telefonica, Inc.*, 447 F.3d 79, 83 (1st Cir. 2006)(*quoting Clark County Sch.*

*Dist. v. Breeden*, 532 U.S. 268, 271 (2001).  A small number of comments over many years,

even if believable, are not objectively pervasive and do not to rise to the level of a hostile

environment-type Title VII violation, since neither the gravity nor the frequency of the conduct

would render the work environment intolerable under any objective standard.  *See Id.*


III.    **HARVARD IS ENTITLED TO JUDGMENT ON ALL OF THE PLAINTIFF'S TORT CLAIMS**

        a.    **All of the Plaintiff's Tort Claims Are Preempted by the Exclusivity Provisions of the Massachusetts Workers' Compensation Act**

The Massachusetts Workers' Compensation Act ("Act") provides the exclusive remedy for

personal injuries sustained where the injury was sustained in the course of, or arising out of, an

individual's employment. M.G.L. c. 152, § 1 (7A); *Dorn v. Astra USA,*975 F. Supp. 388, 395

(D.Mass.1997) (citing *Green v. Wyman-Gordon Co.*, 422 Mass. 551, 558 (1996)).  The Act bars

claims against private employers for personal injuries stemming from negligence as well as intentional torts. *See Chatman v. Gentle Dental Center of Waltham*, 973 F. Supp. 228, 240 (D. Mass. 1997) (citing *Doe v. Purity Supreme*, 422 Mass. 563, 565-66 (1996)). In the present case, any injuries sustained by Plaintiff as a result of the alleged tortious conduct satisfy all three conditions to the exclusivity bar as to Harvard. "Personal injuries" are defined by the Act as "mental or emotional disabilities where a significant contributing cause of such disability [is] an event or series of events occurring within the employment." M.G.L. c. 152, §1 (7A). The alleged injuries undoubtedly arose in the course of Plaintiff's purported employment and the Plaintiff's only connection to Dr. Mushrush was their employment. *See Doe*, 422 Mass. at 566. The Plaintiff did not file a workers' compensation claim. (facts 67). Accordingly, Harvard is entitled to judgment as a matter of law on Plaintiff's claims as to Counts V, VI and VII.

> **b.    Harvard is Entitled to Judgment As A Matter of Law Because None of The Plaintiff's Tort Claims Can Be Attributed to Harvard**

There are additional grounds warranting judgment for Harvard on each of the individual tort claims. As set out in section II. a., *supra*, Harvard did not employ Dr. Mushrush and consequently cannot be liable under the doctrine of *respondeat superior. Kavanaugh v. Trustees of Boston University,* 440 Mass. 195, 198-199 (2003); *see Ward v. Kylander*, *supra*, 2006 WL2141247 at *2; *McPherson v. HCA-Healthone*, 202 F. Supp.2d 1156 (D. Colo. 2002).

Plaintiff's allegations of defamation are legally defective because he has not established the falsity of any statements. Further, each statement appears to be conditionally privileged since each was related to Plaintiff's employment, or training, and under the public duty privilege since Dr. Mushrush was obligated to truthfully report to the Board of Registration. *See Foley v. Polaroid Corp*., 400 Mass. 82, 93-95 (1987). The Plaintiff has also failed to present admissible evidence, other than totem pole hearsay, creating a triable issue as to whether false statements

19

were published to third parties. (facts 80, 81).  *See Foley*, 400 Mass. at 94-95.  The Plaintiff

alleges in Count VII, that Dr. Mushrush made false statements that were outside the scope of her

employment.  (Pl. Am.Compl. ¶92).  As a result, based on this record, any such act cannot be

attributed to any employer, or other party.  *See Kavanaugh, supra.*

### Request for Relief

For all of the foregoing reasons, Defendant Harvard University moves this Court for

Summary Judgment Pursuant Fed. R. Civ. P. 56(c) and for dismissal of all of the remaining

counts of Plaintiff's complaint as to Harvard University.

Respectfully submitted,
Defendant, President and Fellows of
Harvard College,
By its attorneys,

/s/  Daniel S. Field
Daniel S. Field, Esq. (BBO No. 560096)
Robert P. Joy, Esq.  (BBO No. 254820)
MORGAN, BROWN & JOY, LLP
200 State Street
Boston, MA 02109-2605
(617) 523-6666

Date:    September 29, 2006

### Certificate of Service

I hereby certify that this document(s) filed through the ECF system will be sent
electronically to the registered participants as identified on the Notice of Electronic Filing (NEF)
and paper copies will be sent to those indicated as non-registered participants on September 29,
2006.

 /s/ Daniel S. Field
Daniel S. Field