UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
                             )
RAJENDRA D. BADGAIYAN, M.D., )
                             )
      Plaintiff,             )
                             )
          v.                 )
                             )     Civil Action No.
ANTHONY J. PRINCIPI, Secretary, )  04-12031-JLT
Department of Veterans Affairs; )
President and Fellows of     )
HARVARD COLLEGE; and GRACE J. )
MUSHRUSH, M.D.,              )
                             )
      Defendants.            )
                             )
```

**THE DEPARTMENT OF VETERANS AFFAIRS'
MEMORANDUM IN SUPPORT OF HIS
<u>MOTION FOR SUMMARY JUDGMENT</u>**

The defendant, Anthony J. Principi, Secretary of the
Department of Veterans Affairs (the "VA"), submits this
Memorandum in support of his Motion for Summary Judgment. For
the reasons set forth below, the undisputed material facts show
that the VA is entitled to judgment as a matter of law.

**I.    <u>INTRODUCTION</u>**

The plaintiff, Rajendra D. Badgaiyan, M.D. ("Badgaiyan") has
raised allegations of Race, and National Origin Discrimination, a
Hostile Work Environment and Retaliation. He has also alleged
claims for Breach of Contract, Interference with advantageous
Relations, Defamation, Intentional Infliction of Emotional
Distress, and has improperly filed a claim against Grace J.
Mushrush, M.D. For the various reasons raised herein, all of

Badgaiyan's claims should be dismissed.

## II.   LOCAL RULE 56.1 STATEMENT OF FACTS

The VA herein incorporates its Local Rule 56.1 Statement of Materials Facts of Record as if stated herein.

## III.   STANDARD ON MOTION FOR SUMMARY JUDGMENT

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." (Fed. R. Civ. P. 56©). To prevail on summary judgment, the moving party need only demonstrate "that there is an absence of evidence to support the non-moving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986); LeBlanc v. Great American Ins. Co., 6 F.3d 836, 841 (1st Cir. 1993).

Once the moving party satisfies this requirement, the burden shifts to the non-moving party to establish the existence of at least one factual issue that is both genuine and material. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 246 (1986); LeBlanc, 6 F.3d at 841. In order to successfully oppose a motion for summary judgment, the non-moving party "may not rest upon the mere allegation or denials of his pleadings, but must set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 256; LeBlanc, 6 F.3d at 841.  Summary

judgment is appropriate even where motive or intent are at issue, "if the non-moving party merely rests upon conclusory allegations, improbable inferences, and unsupported speculation." LeBlanc, 6 F.3d at 842 (quoting Medina-Munoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990)). Furthermore, "the non-movant's own testimony is treated no differently than that of any other potential trial witness." Simas v. First Citizens' Federal Credit Union, 170 F.3d 37, 50 (1st Cir. 1999). "[T]he non-movant's statements normally pass muster *provided* they (1) are made 'on personal knowledge' of the facts or events described; (2) neither depend on inadmissible hearsay nor (3) purport 'to examine the [movants'] thoughts as well as their actions." Id. at 50-51.

Because Badgaiyan has not "set forth specific facts" and "merely rests upon conclusory allegations, improbable inferences, and unsupported speculation," the VA is entitled to summary judgment.

## IV. BURDEN SHIFTING UNDER TITLE VII

Section 703 of Title VII makes it unlawful to "discriminate against any individual ... because of such individual's race, color, religion, sex or national origin." 42 U.S.C. § 2000e-2(a). It is also illegal "to limit, segregate, or classify ... employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment

3

opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex or national origin." 42. U.S.C. § 2000e-2(b).

In examining whether race or national origin discrimination has occurred, the courts have applied a "three-stage burden shifting framework" in the absence of direct evidence. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973).  In order to establish a prima facie case for discrimination under Title VII, Badgaiyan must show that: "(1) he is a member of a protected class; (2) his employer took an adverse employment action against him; (3) he was qualified for the employment he held; and (4) the position remained open or was filled by a person whose qualifications were similar to his." Rodriguez-Cuervos v. Wal-Mart Stores, Inc., 181 F.3d 15, 19 (1st Cir. 1999) (citing St. Mary's Honor Center v. Hicks, 509 U.S. 502, 506 (1993); McDonnell Douglas Corp., 411 U.S. at 802; Conward v. Cambridge School Comm., 171 F.3d 12, 19 (1st Cir. 1999)).

Once Badgaiyan has satisfied these four elements, there is a rebuttable presumption of discrimination. Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 254 (1981). The burden will then shift to the VA to rebut that presumption by "articulating a legitimate, non-discriminatory reason for its adverse employment action." Rodriguez-Cuervos, 181 F.3d at 19 (citing McDonnell Douglas Corp., 411 U.S. at 802; Shorette v.

4

Rite Aid of Maine, Inc., 155 F.3d 8, 12 (1st Cir. 1998)).

In the third stage, the burden shifts back to Badgaiyan to show that the reason asserted by the VA is merely a pretext for discrimination. St. Mary's Honor Center, 509 U.S. at 507-508; Woods v. Friction Materials, Inc., 30 F.3d 255, 260 (1st Cir. 1994). In order to avoid summary judgment, "the plaintiff must prove not only that the reason articulated by the employer was a sham, but also that its true reason was the plaintiff's race or national origin." Rodriquez-Cuervos, 181 F.3d at 19 (citing Shorette, 155 F.3d at 15). The courts have required that the plaintiff "do more than simply refute or cast doubt on the VA's rationale" in order to successfully carry the burden at this final stage. Medina-Munoz, 896 F.2d at 9; Pakizegi v. First Nat'l Bank of Boston, 831 F.Supp. 901, 908 (D.Mass. 1993), aff'd 56 F.3d 59 (1st Cir. 1995). "While the plaintiff may rely on the same evidence to prove both pretext and discrimination, the evidence must be sufficient for reasonable factfinder to infer that the employer's decision was motivated by discriminatory animus." Udo v. Tomes, 54 F.3d 9, 13 (1st Cir. 1999).

**V. RACE AND NATIONAL ORIGIN DISCRIMINATION (Count I)**

    **A. Badgaiyan Cannot Establish a Prima Facie Case of Race or National Origin Discrimination.**

The VA, for purposes of this Motion only, concedes that Badgaiyan satisfies the first element required to establish a prima facie case for discrimination.

Badgaiyan fails to satisfy the second element under the McDonnell Douglas framework.  An adverse employment action is one that must "materially change the conditions of plaintiff's employ." Gu v. Boston Police Dep't, 312 F.3d 6, 14 (1st Cir. 2002) (citing Blackie v. Maine, 75 F.3d 716, 725 (1st Cir. 1996)).  Although the Supreme Court recently abrogated the holding in Blackie v. Maine in regards to the definition of an adverse employment action, the Supreme Court did not extend its new definition beyond the realm of retaliation. Burlington Northern & Sante Fe Railway Co. v. White, 2006 WL 1698953, *10 (holding that within a retaliation context, an adverse action was not limited to adverse *employment* action in an employment sense). Under the definition applicable to the substantive provisions of Title VII, examples of such adverse employment actions include "demotions, disadvantageous transfers or assignments, refusals to promote, unwarranted negative job evaluations, and toleration of harassment by others." Hernandez-Torres v. Intercontinental Trading Co., 158 F.3d 43, 48 (1st Cir. 1998).

In his amended complaint, Badgaiyan alleges that Dr. Grace J. Mushrush ("Mushrush"), discriminated against him "by making negative statements about South Asian physicians and their training, by withholding from him his performance evaluations, by intervening with [the plaintiff's] immediate training physicians in an effort to persuade them to downgrade his performance

evaluations, and by providing false and inaccurate information to the Massachusetts Board of Registration in Medicine" (Pl.'s Am. Compl. ¶ 45). Aside from Badgaiyan's unsupported allegation that Mushrush somehow convinced his supervisors to give him poor evaluations, none of the claims made by Badgaiyan come close to falling under the category of an adverse employment action. Simply making negative statements or withholding performance evaluations will not "materially change the conditions of employment." Gu, 312 F.3d at 14.

Furthermore, Badgaiyan's poor evaluations are a result of his poor performance rather than any action undertaken by Mushrush, and, thus, are not unwarranted. During Badgaiyan's McLean Hospital rotation, his supervisors, Sara M. Bolton, M.D. ("Bolten") and Paul Barreira, M.D., complained that the plaintiff was "highly variable." (Exh. 1, Ltr. to Mushrush, M.D., dated Nov. 5, 2002). They further stated that he had expressed a desire to discontinue his rotation at McLean and had several unapproved absences. (Exh. 1). Badgaiyan's supervisors also complained that he had difficulty interacting with the nursing and triage staff, which ultimately interfered with patient care and often disregarded recommendations made by residency supervisors. (Exh. 1). These concerns were previously voiced by Bolton in a Preceptor Evaluation in March of 2001. (Exh. 2, Bolton, M.D. Preceptor Evaluation for March 2001).

Furthermore, during Badgaiyan's oral examination, his program supervisors, Fe Festin, M.D. and Robert Alexander, M.D., rated Badgaiyan marginal for his inability to interact well with patients. (Exh. 3, Festin, M.D., Resident Oral Evaluation, dated June 19, 2001; Exh. 4, Alexander, M.D., Resident Oral Evaluation, dated June 19, 2001). In a particularly disturbing incident, Badgaiyan's poor judgment in treating a patient led to a breach in facility security. (Exh. 5, Ltr. to Mushrush, M.D. dated Apr. 3, 2002; Exh. 6, E-Mail from Gurrera, dated Apr. 1, 2002). Specifically, Ronald Gurrera, M.D., the Chief of Inpatient Psychiatry, expressed concern about Badgaiyan's knowledge about the various psychiatric medicines and ability to recognize a dangerous situation. (Exh. 5-6).

A further example of Badgaiyan's poor performance occurred at Taunton State Hospital during one of his rotations. David Osser, M.D., Badgaiyan's supervisor, rated Badgaiyan as marginal and "barely satisfactory." (Exh. 7, Osser, M.D., Supervisor Evaluation, dated July 7, 2001; Exh. 8, Osser M.D., Preceptor Evaluation for July & Aug. 2001). He commented that Badgaiyan's knowledge of psychiatric pharmacology was not to the level expected and that he believed that Badgaiyan had difficulty in applying his extensive knowledge. (Exh. 7). Osser also stated that Badgaiyan's attitude had been unsatisfactory, deserving the lowest rating of "1" out of 5 on his evaluation at the beginning

of his rotation. (Exh. 8).  Although Badgaiyan's attitude
improved during his time at Taunton, it only improved enough for
Osser to give Badgaiyan a final rating of "2.5" out of 5.
Furthermore, Osser expressed concern in Badgaiyan's ability to
assess and document psychiatric issues and medication changes.
(Exh. 8).

Ultimately, Badgaiyan suffered no adverse consequences as a
result of his poor performances and Mushrush's alleged actions.
Despite his poor performance during his oral examination, he was
promoted and graduated from the residency program. (Pl.'s Dep.,
M.D., p. 189:5-10).  Moreover, when Badgaiyan applied for a full
license with the Board of Registration in Medicine ("Board"),
Mushrush timely supported his application and recommended him for
the license. (Pl.'s Dep., p. 200:8-13).

None of the facts alleged by Badgaiyan satisfy the second
element of the Mcdonnell Douglas paradigm, and thus he cannot
establish a prima facie case for race or national origin
discrimination.

**B.    Even if Badgaiyan Could Establish a Prima Facie
        Case of Race and National Origin Discrimination,
        the VA Has Articulated a Legitimate Non-
        Discriminatory Reason for its actions and Badgaiyan
        Cannot Show that It is Merely a Pretext.**

Badgaiyan also fails at the third stage of the McDonnell
Douglas framework.  The third phase requires that Badgaiyan must
show that the legitimate non-discriminatory reason asserted by

9

the VA is merely a pretext for some discriminatory animus. McDonnell Douglas Corp., 411 U.S. at 802.  To meet his burden, Badgaiyan cannot "simply refute or cast doubt on [the] defendant's rationale." Medina-Munoz, 896 F.2d at 9; Pakiqezi, 8310 F.Supp. at 908.

Badgaiyan alleges that his low evaluations are a result of a racial animus and a national origin bias against him.  However, it is plaintiff's disregard to the instruction of supervisors, his poor evaluations, and frequent unexplained absences, which led to his poor grades. (Exh. 1,2,3,4,5,6,7).  On one particular occasion Badgaiyan delayed in admitting an emergency patient causing further injury to the patient. (Exh. 9, E-Mail from Gurrera, M.D., dated Mar. 4, 2002).  This particular patient required immediate admittance because she was suffering from suicidal ideations. (Exh. 9).  Badgaiyan refused to admit the patient until he personally reviewed laboratory tests, and would not accept a verbal confirmation on the patient's lab work. (Exh. 9).  He then demanded that a urine toxicology screen be done on the patient before he would approve admittance. (Exh. 9).  When Badgaiyan's supervisor Gurrera confronted him about his decision in ordering more tests, Badgaiyan was unable to medically justify his decision and "spontaneously reported" that he had already approved admittance (Exh. 9).  Later, when Gurrera verified this story with the attending staff, he determined that Badgaiyan had

not admitted the patient until after his telephone conversation
with Gurrera. (Exh. 9). Ultimately, Badgaiyan's supervisors
concluded that Badgaiyan grossly mishandled the situation. (Exh.
9).

Furthermore, Badgaiyan's various supervisors at different
rotations complained about Badgaiyan's attitude and inability to
properly and sensitively treat patients in the area of
psychiatry. (Exh. 4,5,6,7,9; Exh. 22, McCarley, M.D.'s Dep, p.
87:2-13). In fact, Badgaiyan's delay in being "promoted" to the
next level of the program was due mostly in part to his poor
evaluations for clinical trials. (Exh. 22, McCarley, p. 87:2-13;
Exh. 10, Promotion Committee Notes, dated Apr. 26, 2002; Exh. 11,
E-Mail from McCarley, M.D., dated July 8, 2002). Nobody in the
program administration or among Badgaiyan's supervisors doubted
Badgaiyan's intelligence and knowledge, especially in the area of
research, but there was a disconnect between his extensive
knowledge and his ability to apply that knowledge in clinical
practice. (Exh. 7).

Because the VA has met its burden of articulating a
legitimate non-discriminatory reason for its allegedly adverse
actions against Badgaiyan, his claim for race and national origin
discrimination should be dismissed.

## VI.  BADGAIYAN'S CLAIM OF HOSTILE WORK ENVIRONMENT BASED ON RACE DISCRIMINATION (Count II)

"A hostile work environment exists in violation of Title

11

VII, '[w]hen the workplace is permeated with discriminatory intimidation, ridicule and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Kosereis v. Rhode Island, 331 F.3d 207, 216 (1st Cir. 2003) (quoting Harris v. Forklift Systems, Inc., 510 U.S. 17, 21 (1993)).  In order to establish a prima facie case for hostile work environment, Badgaiyan must satisfy six elements: (1) Badgaiyan is a member of a protected class; (2) Badgaiyan was subject to unwanted harassment; (3) the harassment was based on race or sex; (4) the harassment was sufficiently severe and pervasive, so as to alter the conditions of employment and create a hostile work environment; (5) the harassment was both objectively and subjectively offensive such that a reasonable person would find it hostile or abusive, and that Badgaiyan did perceive it as such; and (6) there is some basis of liability for the employer. Douglas v. J.C. Penney Co., Inc., 422 F.Supp.2d 260, 280 (D. Mass. 2006) (citing O'Rourke v. City of Providence, 235 F.3d 713, 728 (1st Cir. 2001)).

In determining whether a hostile work environment did in fact exist, there is no "mathematically precise test." Harris, 510 U.S. at 21. Instead the courts have opted for a totality of the circumstances test, which includes "frequency and severity of the discriminatory conduct, whether it was physically threatening or humiliating, and whether it unreasonably interfered with the

[plaintiff's] work performance." <u>Kosereis</u>, 331 F.3d at 216

(citing <u>Nat'l R.R. Passenger Corp. v. Morgan</u>, 536 U.S. 101, 116

(2002); <u>Gorski v. N.H. Dep't of Corrections</u>, 290 F.3d 466, 472

(1st Cir. 2002)).

However, it is clear that a hostile work environment will

not arise from "simple teasing, offhand comments, and isolated

incidents." <u>Kosereis</u>, 331 F.3d at 216 (citing <u>Faragher v. City of</u>

<u>Boca Raton</u>, 524 U.S. 775, 778 (1998)). Likewise, "mere offensive

utterances" will not be sufficient. <u>Harris</u>, 510 U.S. at 23.

Courts should use "'common sense, and an appropriate sensitivity

to social context' to distinguish between such innocuous behavior

and severely hostile or abusive conduct." <u>Kosereis</u>, 331 F.3d at

216 (quoting <u>Oncale v. Sundower Offshore Serv., Inc.</u>, 523 U.S.

75, 82 (1998)).

**A.  Badgaiyan's Allegations of a Hostile Work Environment Are not Sufficiently Severe or Pervasive to Create A Hostile Work Environment.**

Badgaiyan cannot prove that the alleged harassment was due

to his race or that it was sufficiently severe or pervasive

enough to alter his working conditions.  The conduct alleged by

Badgaiyan is not objectively offensive and a reasonable person

would not find it hostile or abusive.

Badgaiyan alleges that he was subject to harassment, but is

unable to articulate any specific instances or examples of such

harassment.  He suggests that being called a "bad boy" on two

occasions are examples of harassment. (Exh. 21, Pl.'s Dep., p. 109:10-110:6).  However, he is unable to explain how the term "bad boy" is representative of any discriminatory motive. (Exh. 21, Pl.'s Dep., p. 110:9-14).  In addition, Badgaiyan claims that Mushrush made statements suggesting that Indian doctors "did not value life" and did not care about patients. (Exh. 21, Pl.'s Dep., 99:18-23). Badgaiyan stated that Mushrush had made these comments approximately five to ten times over the course of three years. (Exh. 21, Pl.'s Dep., 100:2-22).  Even if corroborated, these isolated incidences could hardly be considered sufficiently severe or pervasive. See, e.g., Pomales v. Celulares Telefonica, Inc., 447 F.3d 79, 84 (1st Cir. 2006) (finding that a single incident must be very extreme and usually involve a physical contact if it is to create a hostile working environment); White v. New Hampshire Dep't of Corrections, 221 F.3d 254, 260-261 (1st Cir. 2000) (finding that a hostile work environment existed where the employee was subject to "disgusting" statements and comments on a daily basis); Chamberlin v. 101 Realty, Inc., 915 F.2d 777, 783 (1st Cir. 1990) (expressing doubt that five sexual comments in a four to five week period would be sufficient to create a hostile work environment).

The comments described by Badgaiyan viewed in the totality of the circumstances are not nearly severe, pervasive or frequent enough to create a hostile work environment.  Furthermore, the

14

conduct alleged by Badgaiyan did not alter the conditions of his employment.  As argued earlier, Badgaiyan's poor evaluations and delay in promotion were a result of his actions and poor performance (Exh. 1-10), and not based on his insufficient evidence to show that any harassment actually occurred.

**B.    Even if Badgaiyan Could Establish a Prima Facie Case to Create a Hostile Work Environment, the Conduct Alleged by him Does Not Survive a Totality of the Circumstances Analysis.**

The "harassment" alleged by Badgaiyan might be considered distasteful, but is not sufficiently frequent, severe or humiliating to create a hostile working environment.  "Mere offensive utterances" are not enough.  Harris, 510 U.S. at 23. Title VII was not created to be a "general civility code." Oncale, 522 U.S. at 81.

Although Badgaiyan alleges that his interactions with Mushrush were usually of an unsavory nature, there is a distinction between "the ordinary, if occasionally unpleasant, vicissitudes of the workplace and actual harassment." Douglas, 422 F.Supp.2d at 280 (citing Noviello, 298 F.3d at 88). Badgaiyan stated that the tenor of his relationship with Mushrush was an angry one. (Exh. 21, Pl.'s Dep., p. 84:21-24).  It is an unfortunate circumstance that Badgaiyan felt that he did not get along with his supervisor Mushrush, however, this general disagreement in personality cannot suffice as the basis of a hostile work environment claim.

In addition, Mushrush's alleged comments about the quality of medical education or physicians in India are equally benign. Granted, Mushrush's alleged remarks about Indian doctors' disregard for human life may depict an unprofessional style of management, it is clearly not sufficiently severe. <u>See</u>, <u>e.g.</u>, <u>Lee-Crespo v. Schering-Plough Del Caribe, Inc.</u>, 354 F.3d 34, 46-47 (1st Cir. 2003) (holding that a manager's unprofessional managing style was not the focus of Title VII); <u>Rogers v. Equal Employment Opportunity Commission</u>, 454 F.2d 234, 238 (1st Cir. 1971) (superceded by statute on other grounds) (racial or ethnic epithets which merely engender offensive feelings within an employer are not sufficient to create a hostile work environment).  Courts have required a much higher level of offensiveness and frequency in order to find a hostile work environment.  <u>Kosereis</u>, 331 F.3d at 216 (finding that name calling and teasing by residents and teachers was not "severe of pervasive conduct"); <u>Douglas</u>, 422 F.Supp.2d 260 (where the employer made references to "those people" and commented about "two black employees standing around" did not rise to the level of actionable conduct).

Here, Badgaiyan cannot show instances of alleged harassment which would constitute a hostile work environment.

**VII.     <u>RETALIATION</u> (Count III)**

In order to establish a prima facie case of retaliation

under the McDonnell Douglas framework, Badgaiyan must show that:
"(1) he engaged in protected conduct, (2) he was thereafter
subject to an adverse employment action, and (3) a causal
connection exists between the protected conduct and the adverse
action." McDonough v. City of Quincy, 452 F.3d, 8, 18 (1st Cir.
2006) (citing Ramirez Rodriguez v. Boehringer Ingelheim
Pharmaceuticals, Inc., 425 F.3d 67, 84 (1st Cir. 2005)).  If
Badgaiyan has succeeded in satisfying these three elements, the
burden shifts to the VA to articulate a legitimate, non-
discriminatory reason for the adverse employment action. Id.  If
and when the VA satisfies his burden, the burden will fall back
to Badgaiyan. Id.  Badgaiyan must show that the reasons asserted
by the VA are merely a pretext for its true discriminatory
motives. Id.

It is undisputed that Badgaiyan satisfied the first element
when he contacted the Office of Resolution Management for Equal
Employment Opportunity ("EEO") counseling on May 28, 2002 and
subsequently filed a formal complaint on October 7, 2002.  The
latter two elements have not and cannot be satisfied.

In order to satisfy the second element, Badgaiyan must show
that "a reasonable employee would have found the challenged
action materially adverse." Burlington Northern & Sante Fe
Railway v. White, 2006 WL 1698953, *10.  To be "materially
adverse," the action must have "dissuaded a reasonable worker

17

from making or supporting a charge of discrimination." <u>Id</u>.
(quoting <u>Rochon v. Gonzales</u>, 438 F.3d 1211, 1219 (D.C. Cir.
2006)).  However, this new and broader definition of "adverse
action" does not "immunize" the employee from "petty slights or
minor annoyances that often take place at work and that all
employees experience." <u>Burlington Northern</u>, 2006 WL 1698953, *10.
The anti-retaliation provision in Title VII does not seek to
prevent all retaliation; it only seeks to redress retaliation
which is injurious or harmful. <u>Id</u>.

The third element requires Badgaiyan to show causation. A
"close temporal proximity between two events may give rise to an
inference of causal connection." <u>Hodgens v. General Dynamics
Corp.</u>, 144 F.3d 151, 168 (1st. Cir. 1998).  However, there must
be reliable evidence that the employer had knowledge of
Badgaiyan's protected conduct and had the intent to retaliate
against Badgaiyan when taking the adverse action. <u>Lewis v.
Gillette Co.</u>, 22 F.3d 22, 24 (1st Cir. 1994) (citations omitted).
If Badgaiyan relies merely on the temporal proximity between the
employer's knowledge and the adverse action, then there must be
sufficient evidence that the two events occurred "very close[ly]"
in time. <u>Clark Co. School District v. Breeden</u>, 532 U.S. 268, 273
(2001) (citing <u>Neal v. Ferguson Construction Co.</u>, 237 F.3d 1248,
1253 (10th Cir. 2001)).

### A.    Badgaiyan Cannot Establish a Prima Facie Case for Retaliation.

Badgaiyan is unsuccessful in bringing a retaliation claim because he fails in satisfying two of the elements necessary to establish a prima facie case.

Badgaiyan alleges that he was subject to an adverse employment action when Mushrush allegedly "failed and refused for a substantial period of time to confirm his participation in the program" for Badgaiyan's application to the Massachusetts Board of Registration & Medicine (the "Board") for a full license. Pl.'s Am. Compl. ¶ 61. Badgaiyan contends that Mushrush further retaliated against him when she again delayed in "acting" on Badgaiyan's limited license application. Pl. Am. Compl. ¶ 62.

Mushrush neither delayed providing the necessary information to the Board nor did she attempt to undermine Badgaiyan's application for a medical license. Badgaiyan's application for a full license was received on March 2, 2004. (Exh. 12, Ltr. to Badgaiyan, M.D., dated Mar. 3, 2004). Mushrush timely submitted the necessary evaluation forms, and they were received by the Board on April 15, 2004. (Exh. 13, Ltr. to Farmer (Board of Registration), dated April 14, 2004). On June 18, 2004, the Board informed Badgaiyan that they would defer further review of his application until he underwent a psychiatric evaluation. (Exh. 14, Ltr. to Badgaiyan, M.D., dated Jun. 18, 2004). It is clear that Mushrush's timely response in answering requests for information had no effect in delaying the Board's decision. It

19

was, in fact, Badgaiyan's delay in seeking out a psychiatric evaluation and scheduling conflicts between the Board psychiatrist and other interested parties which caused the delay. (Exh. 15, Ltr. to Badgaiyan, M.D., dated Oct. 22, 2004); Exh. 21, Pl.'s Dep., p. 240:15-18.

Badgaiyan also fails in satisfying the third element. The two events are not close enough in time to give rise to the inference of a causal link. Badgaiyan filed his formal complaint in October of 2002 (Exh. 23), and the allegedly retaliatory conduct did not occur until March 2004. Under the third requirement to establish a prima facie case of retaliation, the plaintiff must demonstrate a causal connection between the protected activity and the adverse employment action. McDonnell Douglas Corp., 411 U.S. at 802-804; Hazel, 7 F.3d at 3. An inference of retaliation may arise where "a showing of adverse action ... soon after the employee engages in protected activity specifically protected by section 704(a) of Title VII ... is indirect proof of a causal connection between the adverse action... and the activity because it is strongly suggestive of retaliation." Ruffino, 908 F. Supp. at 1044; Oliver v. Digital Equipment Corp., 846 F.2d 103, 110 (1st Cir. 1988).

The temporal period between the protected activity and the adverse employment action must not be lengthy, and if it is, no inference of causation is created. Woods v. Bentsen, 889 F.

Supp. 179, 187 (E.D. Pa. 1995); <u>Parrott v. Cheney</u>, 748 F. Supp. 312, 318 (D. Md. 1989), <u>aff'd</u>, 914 F.2d 248 (4th Cir. 1990).  The First Circuit has found time periods of nine months and two years as being too lengthy for a causal connection to be inferred. Other courts have held that if a time period of four months has elapsed after the protected activity without employer reprisal, no inference of causation is created.  <u>Woods</u>, supra at 187; <u>Mesnick v. General Electric Company</u>, 950 F.2d 816, 828 (1st Cir. 1991)(nine months since plaintiff first enlisted the EEOC to the time he was fired was too long for a finding of causal connection); <u>Hughes v. Derwinski</u>, 967 F.2d 1168, 1174 (7th Cir. 1992)(disciplinary letter issued four months after discrimination charge filed not causally linked to employer action); <u>Lees v. Case-Hoyt Corp</u>., 779 F. Supp. 717, 727 (W.D.N.Y. 1991)(suspension four months after filing of discrimination complaint not causally linked to adverse employment action).  <u>Juarez v. Ameritech Mobile Communications, Inc.</u>, 746 F. Supp. 798 (N.D. Ill. 1990)(almost six months does not support an inference), <u>aff'd</u>, 957 F.2d 317 (7th Cir. 1992); <u>Cooper v. City of North Olmsted</u>, 795 F.2d 1265, 1272 (6th Cir. 1986)(discharge four months after filing of discrimination charge not causally linked to adverse employer action); <u>Jones v. Flagship International</u>, 793 F.2d 714 (5th Cir. 1986)(no finding of causal connection even though plaintiff terminated 10 weeks after filing EEO charge).

21

Here, Badgaiyan filed a formal EEO complaint in September, 2002 and the events involving his application for a medical license started in March, 2004.  This allegation of retaliation occurred some sixteen (16) months following his formal EEO complaint.  The First Circuit has held that no causal connection can be drawn from adverse actions accruing nine months after the protected activity, let alone for a period of sixteen months. <u>Mesnick</u>, 950 2d. at 828.  Based on the lengthy temporal period between the protected activity (the plaintiff filing his EEO complaint) and the retaliatory allegations in Count III of the Complaint, no inference of retaliation can be drawn.

**VIII.    <u>BADGAIYAN'S BREACH OF CONTRACT CLAIM</u> (Count IV)**

It is well-settled that district courts do not have subject matter jurisdiction over contract claims like those alleged in Plaintiff's Complaint.  For example, in <u>1610 Corp. v. Kemp</u>, the court held that, because plaintiff's claim was contractual in nature and because plaintiff sought to recover over $10,000 in compensatory damages, "jurisdiction over the plaintiff's contract claims falls within the jurisdiction of the Claims Court," pursuant to the Tucker Act.  753 F. Supp. 1026, 1029 (D. Mass. 1991).  Similarly, in another case, the district court determined that it lacked subject matter jurisdiction over a contract action brought against a federal agency, since the Tucker Act vested exclusive subject matter jurisdiction over all such suits in

excess of $10,000 in the Court of Federal Claims.  <u>V.S. Ltd.</u>
<u>Pshp. v. HUD</u>, 235 F.3d 1109 (8th Cir. 2000).

Here, Badgaiyan has failed to state a basis for subject
matter jurisdiction in its Complaint.  The only basis that may
exist over Badgaiyan's claims is the Tucker Act, 28 U.S.C. §§
1396, 1491.[1]  The Tucker Act constitutes a grant of subject
matter jurisdiction and a conditional waiver of sovereign
immunity with regard to monetary claims "founded either upon the
Constitution, or any Act of Congress, or any regulation of an
executive department, or upon any express or implied contract
with the United States, or for liquidated or unliquidated damages
in cases not sounding in tort."  28 U.S.C. § 1491(a)(1).  Under
what is referred to as the "Big Tucker Act," 28 U.S.C. §
1491(a)(1), original jurisdiction over any such claim seeking
more than $10,000 vests exclusively in the Court of Federal
Claims.

IX.      **BADGAIYAN'S INTERFERENCE WITH**
         <u>**ADVANTAGEOUS RELATIONS CLAIM**</u> **(Count V)**

Interference with advantageous relations falls within the
exclusionary umbrella of interference with contract rights. <u>See</u>

_____

[1]      The Tucker Act consists of 28 United States Code
Section 1491, which sets out the jurisdiction of the Court of
Federal Claims, and 28 United States Code Section 1346, which
provides concurrent jurisdiction to the district courts for non-
contract  claims not exceeding $10,000.  28 U.S.C. § 1346(a)(2)
is referred to as the "Little Tucker Act."  <u>See</u> 16 <u>Moore's</u>
<u>Federal Practice</u> § 105.25 (Matthew Bender 3d ed.), However, as is
evident from the Complaint, Plaintiff's claims clearly do not
fall under this category.

e.g., Ongaro, 988 F.2d at 121 (plaintiff's "claim against the government was for tortious interference with a business relationship, which is explicitly excepted from the FTCA under section 2680(h)"); Cooper v. American Automobile Ins. Co., 978 F.2d 602, 613 (10th Cir. 1992) (the claim for loss of future business opportunities was barred by section 2680(h)); Chen v. U.S., 854 F.2d 622, 628 (2nd Cir. 1988); Art Metal-U.S.A., Inc. v. U.S., 753 F.2d 1151, 1154-1155 (D.C. Cir. 1985) (it would be illogical to hold except interference with contract relations from liability, but not except interference with economic relationships with third parties); Small v. U.S., 33 F.2d 702, 704 (3rd Cir. 1964) (the exemption for interference with existing contractual relationships extends to unlawful interference with prospective contractual relationships as well). Therefore, this Count of Badgaiyan's complaint should be dismissed because the FTCA does not waive sovereign immunity for that type of claim.

X.        **BADGAIYAN'S CLAIM OF DEFAMATION** (Count VI)

Even if Badgaiyan had articulated the proper jurisdictional statute in his complaint, his sixth count for defamation would still be barred because sovereign immunity has not been waived. As a claim which "arises out of" slander and libel, the FTCA has similarly exempted defamation from the FTCA's waiver of sovereign immunity. 29 U.S.C. § 2680(h); Siegert v. Gilley, 500 U.S. 226, 234 (1991) ("under the Federal Tort Claims Act—such a suit could

not be brought, in light of the exemption in that Act for claims based on defamation"); <u>Operation Rescue National v. U.S.</u>, 147 F.3d 68, 69 (1st Cir. 1998) ("the FTCA excepts liability for defamation").

## XI.  BADGAIYAN'S CLAIM OF Intentional Infliction of Emotional Distress (Count VII)

In order to successfully bring a tort claim against the United States, Badgaiyan must bring the claim under the FTCA. 28 U.S.C. § 2671 et seq.  However, even before filing an action with the courts, Badgaiyan must have fulfilled the administrative prerequisites.  Section 2675(a) of the title 28, United States Code, the FTCA, requires that Badgaiyan present his claim to the appropriate federal agency, and that, subsequently, the agency denied his claim in writing. 28 U.S.C. § 2675(a).  Furthermore, the regulations requiring notice under the FTCA provides that Badgaiyan must submit standard Form 95 or provide other written notification of the incident in addition to the claim for damages. 28 C.F.R. § 14.2(a).  "The purpose behind the administrative claim requirement is  to give the government an initial opportunity to carefully investigate the specifics of each individual claim against it and settle those claims which are meritorious." Cogburn v. U.S., 717 F.Supp. 958, 963 (D. Mass. 1989).  Failures to afford the agency proper notice deprives the U.S. District Courts of jurisdiction over tort claims against the United States. <u>Eveland v. Director of Central Intelligence</u>

25

Agency, 843 F.2d 46, 50 (1st Cir. 1988).

Since proper notice has not been given the VA, the Court should dismiss Badgaiyan's claim for intentional infliction of emotional distress.

**XII.     Grace Mushrush, M.D. Should be Dismissed As the Agency Head is the Only Proper Defendant in a Title VII Case**

The only proper defendant in a Title VII case in which a federal employee is alleging discrimination is the head of the employing federal agency.

As a federal employee, any allegations of discrimination must be brought under Title VII. Neves v. Kolaski, 602 F. Supp 645, 648 (D.R.I. 1985)(Congress intended that Title VII serve as the sole remedy for discrimination against federal employees). As a federal employee, the head of an employing federal agency is the only proper defendant in an action brought by a federal employee against the federal government. Civil Rights Act of 1964, § 717 ©, as amended, 42 U.S.C.A. § 2000e-16©; see also Soto v. U.S. Postal Service, 905 F.2d 537, 539 (1st Cir. 1990)(the head of the agency is the only proper defendant in a Title VII action); Rys v. U.S. Postal Service, 886 F.2d 443, 445 (1st Cir. 1989)(the head of the agency is the only proper defendant); Ciafrei v. Bentsen, 877 F. Supp 788, 796 (D.R.I. 1995)("Title VII is the exclusive remedy for the

26

redress of federal employment discrimination and preempts other discrimination laws"). <u>Desroches v. U.S. Postal Service</u>, 631 F. Supp. 1375, 1378 (D.N.H. (1986)("It is thus well established that a Title VII suit, and therefore a suit brought pursuant to the Act, where the employment involved was with the federal government, can be brought only against the head of the department, agency, or unit  against which discrimination is alleged" - See <u>Hall v. Small Business Administration</u>, 695 F2d 175, 180 (5th Cir. 1983)(Administrator of SBA proper defendant in Title VII action); <u>Shirley v. Devine</u>, 670 F2d 1188, 1205 n. 48 (D.C.Cir. 1982)(Administrator of NASA proper defendant in suit under the Act; <u>Person v. United States Department of Agriculture</u>, 593 F. Supp. 1054, 1059 (E.D. Wis 1984)(Secretary of USDA proper defendant in Title VII action); <u>Campbell v. United States Navy</u>, 567 F. Supp. 356, 357-58 (D. Md. 1983)(Secretary of Navy proper defendant in suit brought under the Title VII).

Here, given that Badgaiyan was hired within the VA federal system, and he is alleging discrimination, it is well established that the only proper defendant is Anthony J. Principi, Secretary of the Department of Veterans Affairs (see: case law cited above).  Thus Badgaiyan's claim against Mushrush should be dismissed.

XIII.    **CONCLUSION**

Because Badgaiyan failed to make out a prima facie case as to Count I, Count II and Count III, and because he failed to provide a federal jurisdictional basis for Count IV, Count V, Count VI and Count VII, the VA respectfully requests that the Court dismiss all seven of Badgaiyan's claims.

Respectfully submitted,
ANTHONY J. PRINCIPI, SECRETARY
OF THE DEPT. OF VETERANS
AFFAIRS,

By his Attorneys,

MICHAEL J. SULLIVAN
United States Attorney

/s/ Rayford A. Farquhar
Rayford A. Farquhar
Assistant U.S. Attorney
U.S. Attorney's Office
1 Courthouse Way, Suite 9200
Boston, MA 02465
(617) 748-3284

**CERTIFICATE OF SERVICE**

I hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on September 29, 2006

/s/ Rayford A. Farquhar

Rayford A. Farquhar

28