```
                  UNITED STATES DISTRICT COURT
                   DISTRICT OF MASSACHUSETTS
```

|  |  |
|---|---|
| RAJENDRA D. BADGAIYAN, M.D., )<br>                               )<br>     Plaintiff,              )<br>                               )<br>     v.                        )<br>                               )   Civil Action No.<br>ANTHONY J. PRINCIPI, Secretary,)   04-12031-JLT<br>Department of Veterans Affairs;)<br>President and Fellows of       )<br>HARVARD COLLEGE; and GRACE J.  )<br>MUSHRUSH, M.D.,                )<br>                               )<br>     Defendants.              )<br>                               ) | |

**THE DEPARTMENT OF VETERANS AFFAIRS'
LOCAL RULE 56.1 STATEMENT OF MATERIAL FACTS**

The defendant, Anthony J. Principi, Secretary of the Department of Veterans Affairs (the "VA"), submits its Local Rule 56.1 Statement of Material Facts.

1. The VA is an agency of the government of the United States of America. It operates a number of facilities to serve the needs of veterans of military service, including a hospital which provides psychiatric care to veterans. (Pl.'s Am. Compl. ¶4).

2. The plaintiff, Rajendra D. Badgaiyan, M.D. ("Badgaiyan"), alleges that Dr. Grace J. Mushrush ("Mushrush"), discriminated against him "by making negative statements about South Asian physicians and their training, by withholding from him his performance evaluations, by intervening with [his] immediate

training physicians in an effort to persuade them to downgrade his performance evaluations, and by providing false and inaccurate information to the Massachusetts Board of Registration in Medicine" (Pl.'s Am. Compl. ¶ 45).

3. During Badgaiyan's McLean Hospital rotation, his supervisors, Sara M. Bolton, M.D. ("Bolten") and Paul Barreira, M.D., complained that Badgaiyan was "highly variable." (Exh. 1, Ltr. to Mushrush, M.D., dated Nov. 5, 2002). Badgaiyan's supervisors further stated that he had expressed a desire to discontinue his rotation at McLean and had several unapproved absences. (Exh. 1). Badgaiyan's supervisors also complained that he had difficulty interacting with the nursing and triage staff, which ultimately interfered with patient care and often disregarded recommendations made by residency supervisors. (Exh. 1). These concerns were previously voiced by Bolton in a Preceptor Evaluation in March of 2001. (Exh. 2, Bolton, M.D. Preceptor Evaluation for March 2001).

4. During Badgaiyan's oral examination, his program supervisors, Fe Festin, M.D. and Robert Alexander, M.D., rated Badgaiyan marginal for his inability to interact well with patients. (Exh. 3, Festin, M.D.,

      Resident Oral Evaluation, dated June 19, 2001; Exh. 4, Alexander, M.D., Resident Oral Evaluation, dated June 19, 2001). In a particularly disturbing incident, Badgaiyan's poor judgment in treating a patient led to a breach in faciltiy security. (Exh. 5, Ltr. to Mushrush, M.D. dated Apr. 3, 2002; Exh. 6, E-Mail from Gurrera, dated Apr. 1, 2002). Specifically, Ronald Gurrera, M.D., the Chief of Inpatient Psychiatry, expressed concern about Badgaiyan's knowledge about the various psychiatric medicines and ability to recognize a dangerous situation. (Exh. 5-6).

5. A further example of Badgaiyan's poor performance occurred at Taunton State Hospital during one of his rotations. David Osser, M.D., Badgaiyan's supervisor, rated Badgaiyan as marginal and "barely satisfactory." (Exh. 7, Osser, M.D., Supervisor Evaluation, dated July 7, 2001; Exh. 8, Osser M.D., Preceptor Evaluation for July & Aug. 2001). He commented that Badgaiyan's knowledge of psychiatric pharmacology was not to the level expected and that he believed that Badgaiyan had difficulty in applying his extensive knowledge. (Exh. 7).

6. Osser also stated that Badgaiyan's attitude had been unsatisfactory, deserving the lowest rating of "1" out

       of 5 on his evaluation at the beginning of his rotation. (Exh. 8).  Although Badgaiyan's attitude improved during his time at Taunton, it only improved enough for Osser to give Badgaiyan a final rating of "2.5" out of 5.  Furthermore, Osser expressed concern in Badgaiyan's ability to assess and document psychiatric issues and medication changes. (Exh. 8).

7. Ultimately, Badgaiyan suffered no adverse consequences as a result of his poor performances and Mushrush's alleged actions. Despite his poor performance during his oral examination, he was promoted and graduated from the residency program. (Pl.'s Dep., M.D., p. 189:5-10).  Moreover, when Badgaiyan applied for a full license with the Board of Registration in Medicine ("Board"), Mushrush supported his application and recommended him for the license. (Pl.'s Dep., p. 200:8-13).

8. It was Badgaiyan's disregard to the instruction of supervisors, his poor evaluations, and frequent unexplained absences, which led to his poor ratings. (Exh. 1,2,3,4,5,6,7).

9. On one particular occasion Badgaiyan delayed in admitting an emergency patient causing further injury to the patient. (Exh. 9, E-Mail from Gurrera, M.D.,

4

dated Mar. 4, 2002). This particular patient required immediate admittance because she was suffering from suicidal ideations. (Exh. 9). Badgaiyan refused to admit the patient until he personally reviewed laboratory tests, and would not accept a verbal confirmation on the patient's lab work. (Exh. 9). He then demanded that a urine toxicology screen be done on the patient before he would approve admittance. (Exh. 9). When Badgaiyan's supervisor Gurrera confronted him about his decision in ordering more tests, Badgaiyan was unable to medically justify his decision and "spontaneously reported" that he had already approved admittance (Exh. 9). Later, when Gurrera verified this story with the attending staff, he determined that Badgaiyan had not admitted the patient until after his telephone conversation with Gurrera. (Exh. 9). Ultimately, Badgaiyan's supervisors concluded that Badgaiyan grossly mishandled the situation. (Exh. 9).

10. Badgaiyan's various supervisors at different rotations complained about his attitude and inability to properly and sensitively treat patients in the area of psychiatry. (Exh. 4,5,6,7,9; Exh. 22, McCarley, M.D.'s Dep, p. 87:2-13). In fact, Badgaiyan's delay in being "promoted" to the next level of the program was due

mostly in part to his poor evaluations for clinical trials. (Exh. 22, McCarley, p. 87:2-13; Exh. 10, Promotion Committee Notes, dated Apr. 26, 2002; Exh. 11, E-Mail from McCarley, M.D., dated July 8, 2002). Nobody in the program administration or among Badgaiyan's supervisors doubted Badgaiyan's intelligence and knowledge, especially in the area of research, but there was a disconnect between his extensive knowledge and his ability to apply that knowledge in clinical practice. (Exh. 7).

11. Badgaiyan suggests that being called a "bad boy" on two occasions are examples of harassment. (Exh. 21, Pl.'s Dep., p. 109:10-110:6). However, he is unable to explain how the term "bad boy" is representative of any discriminatory motive. (Exh. 21, Pl.'s Dep., p. 110:9-14).

12. In addition, Badgaiyan claims that Mushrush made statements suggesting that Indian doctors "did not value life" and did not care about patients. (Exh. 21, Pl.'s Dep., 99:18-23). Badgaiyan stated that Mushrush had made these comments approximately five to ten times over the course of three years. (Exh. 21, Pl.'s Dep., 100:2-22).

13. Badgaiyan alleges that he was subject to an adverse

employment action when Mushrush allegedly "failed and refused for a substantial period of time to confirm his participation in the program" for Badgaiyan's application to the Massachusetts Board of Registration & Medicine (the "Board") for a full license. Pl.'s Am. Compl. ¶ 61.  Badgaiyan contends that Mushrush further retaliated against him when she again delayed in "acting" on Badgaiyan's limited license application. Pl. Am. Compl. ¶ 62.

14. Badgaiyan's application for full license was received on March 2, 2004. (Exh. 12, Ltr. to Badgaiyan, M.D., dated Mar. 3, 2004).  Mushrush timely submitted the necessary evaluation forms, and they were received by the Board on April 15, 2004. (Exh. 13, Ltr. to Farmer (Board of Registration), dated April 14, 2004).

15. On June 18, 2004, the Board informed Badgaiyan that they would defer further review of his application until he underwent a psychiatric evaluation. (Exh. 14, Ltr. to Badgaiyan, M.D., dated Jun. 18, 2004).  It is clear that Mushrush's timely response in answering requests for information had no effect in delaying the Board's decision.  It was, in fact, Badgaiyan's delay in seeking out a psychiatric evaluation and scheduling conflicts between the Board psychiatrist and other

> interested parties which caused the delay. (Exh. 15, Ltr. to Badgaiyan, M.D., dated Oct. 22, 2004); Exh. 21, Pl.'s Dep., p. 240:15-18.

16. Badgaiyan filed his formal complaint in October of 2002 (Exh. 23).

Respectfully submitted,
ANTHONY J. PRINCIPI, SECRETARY
OF THE DEPT. OF VETERANS
AFFAIRS,

By his Attorneys,

MICHAEL J. SULLIVAN
United States Attorney

/s/ Rayford A. Farquhar
Rayford A. Farquhar
Assistant U.S. Attorney
U.S. Attorney's Office
1 Courthouse Way, Suite 9200
Boston, MA 02465
(617) 748-3284

**CERTIFICATE OF SERVICE**

I hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on September 29, 2006.

/s/ Rayford A. Farquhar
Rayford A. Farquhar