# The Harvard South Shore Psychiatry Residency Training Program

Department of Veterans Affairs Medical Center, Boston Healthcare System
Brockton, Massachusetts
A Teaching Hospital of Harvard Medical School

 

*This certifies that*

## Rajendra D. Badgaiyan, M.D.

*has successfully served as*

### Resident in Psychiatry – PGY II–IV

October 19, 2000 – December 31, 2003

_____
Chester P. Sweet, MD
Clinical Director, Brockton Division – Mental Health

_____
Associate Chief of Staff, Education

_____
Chief of Staff

_____
Grace J. Mushrush, M.D.
Director of Training

_____
Robert W. McCarley M.D.
Head, HMS Department of Psychiatry; DCOS/MH

_____
Medical Center Director

EXHIBIT 5 McCarley

FROM : Harvard So Shore Psych Res Trn    FAX NO. : 508-895-0181    Sep. 19 2003 10:11AM P5

# HARVARD SOUTH SHORE
## PSYCHIATRY RESIDENCY TRAINING PROGRAM

### PRECEPTOR EVALUATION OF TRAINEE

N.B. April 29, 2002 — received call from Dr. Beiton responding to my request that Raj repeat this rotation. They were unwilling to have him back. JM

Feedback is essential if our trainees are to improve their clinical skills. Please complete one of these forms for each psychiatric trainee who rotated through your service. Please be as explicit as possible in your answers. These evaluations will be available for review by both the trainees and the committee which certifies the trainees' clinical competence for the American Board of Psychiatry and Neurology.

Please rank skills as follows: 1 = unsatisfactory; 2 = marginal; 3 = satisfactory; 4 = good; 5 = outstanding;
N.O. = not observed.

Name of Trainee __Rajendra Badgaiyan__    PGY __II__

Service __Psychiatry (McLean)__    From __March 2001__ To _____

Inpatient? _____    Ambulatory Care? _____    Name of Clinic __Clinical Evaluation Center__

### PERFORMANCE

| | | | |
|---|---|---|---|
| History taking | 2 | Thoroughness of follow-up | 2 |
| Physical exam | 3 | Use of lab + other dx. tests | 3 |
| Mental status exam | 2 | Doctor/patient relations | 4 |
| Problem formulation | 2 | | |
| Record keeping | 4/2 | | |
| Initial plans | 3 | | |

### CAPABILITIES

Knowledge __2 clinical / 4 research__

Attitude __1__

Rate of learning and ability to learn __3__

Reviewed this evaluation with all supervisors given the concerns and adjusted accordingly. Please call if questions —
Sara Boston 2/4/

Additional comments, either specifically related to the items listed above, or generally: Dr Badgaiyan's performance varied considerably with some thorough workups but others with deficiencies. He took several days off and tried to take others so that it was difficult to count on his being part of our service. He expressed the wish to not have to rotate on our service at all from the beginning and this is likely to have led to the above problems. I reviewed his performance with many of our staff psychiatrists/trainers, who then input is...

Signed _____ M.D.

Please print name _____

Please return to Grace J. Mushrush, M.D., Assistant Chief of Psychiatry for Education and Director of VA288

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CASE NUMBER: 03 11573 MEL

MOIRA LOCKE,
    Plaintiff

v.

HARVARD UNIVERSITY, PRESIDENT
& FELLOWS OF HARVARD COLLEGE,
VETERANS ADMINISTRATION, AND
DR. GRACE MUSHRUSH IN HER OFFICIAL
AND INDIVIDUAL CAPACITY,
    Defendants

## AFFIDAVIT OF MARGARET DALE, ASSOCIATE DEAN FOR FACULTY AFFAIRS, HARVARD MEDICAL SCHOOL

1. My name is Margaret Dale; I am employed as Associate Dean for Faculty Affairs at Harvard Medical School and I make this affidavit of my own personal knowledge and based upon a review of records kept in the ordinary course of business at Harvard Medical School.

2. Attached to this Affidavit as Exhibit "A" is a true and accurate copy of an agreement between Harvard Medical School and the United States Department of Veteran Affairs dated September, 1997, and entitled "Memorandum of Affiliation, School of Medicine Agreement Between Department of Veterans Affairs and the Undersigned School of Medicine." (hereinafter "The Agreement").

3. The Agreement was in force and governed the relationship between Harvard Medical School and the Department of Veterans Affairs in May and June, 2002 when according to the Complaint in this action the plaintiff was denied a residency position at a Veterans Administration Hospital.

4. The plaintiff in the above-captioned action alleges that on May 30, 2002 she was offered a psychiatric residency position by Dr. Grace Mushrush, that "a day or so later" the plaintiff informed defendants "through Mushrush" that she [plaintiff] was pregnant; and that "the following day, Defendants, through Mushrush, withdrew the offer to plaintiff on account of Plaintiff's pregnancy."

5. On January 6, 2004, Acting U.S. Attorney, Gerard T. Leone, filed a Certificate in this action acknowledging that Grace Mushrush, M.D. was acting within the course and scope of her employment with the United States at time of events alleged in the complaint.

6. In 2002, Grace Mushrush was not an employee of Harvard Medical School; she did not have authority from Harvard Medical School to offer or rescind offers of appointments to faculty positions or for clinical fellowships with Harvard Medical School.

7. According to Harvard Medical School records, no request or recommendation was ever made by Grace Mushrush, M.D. or any other employee of the United States Department of Veteran Affairs regarding the plaintiff, Moira Locke, being appointed to any faculty or teaching position with Harvard Medical School or being awarded (or denied) a clinical fellowship with Harvard Medical School.

SUBSCRIBED UNDER THE PENALTIES OF PERJURY THIS 26 DAY OF MARCH, 2004:

Margaret L. Dale
Associate Dean for Faculty Affairs
Harvard Medical School

MEMORANDUM OF AFFILIATION
SCHOOL OF MEDICINE AGREEMENT

BETWEEN DEPARTMENT OF VETERANS AFFAIRS (VA)
AND THE UNDERSIGNED SCHOOL OF MEDICINE

VA NETWORK:    NETWORK 1

VA TREATMENT FACILITY:    BROCKTON/WEST ROXBURY, MA

NAME OF SCHOOL OF MEDICINE:    HARVARD MEDICAL SCHOOL

This agreement, when duly executed and approved by the Department of Veterans Affairs (VA), authorizes VA, its Veterans Integrated Service Networks and the listed VA facilities, to affiliate with the university school of medicine for the academic purposes of enhanced patient care, education and research. VA and the affiliated school have a shared responsibility for the academic enterprise. The school accepts primary responsibility for integrated education programs conducted with VA; and VA retains full responsibility for the care of patients, including administrative and professional functions pertaining thereto. Responsibilities are to be shared as follows:

1. **The Medical School**
   a. Nominates membership for the VA Affiliation Partnership Council and its subcommittees; membership will include the Medical School Dean and senior faculty members from appropriate divisions of the medical school.
   b. Nominates faculty to serve as VA medical staff in the number and with qualifications agreed to by the school and VA.
   c. Through the VA facility Director and the medical staff, participates in the supervision of integrated academic programs at the VA. VA staff members who are also faculty members are responsible for student and house staff supervision for educational purposes but may delegate responsibility to non-faculty VA staff members under unusual circumstances.
   d. Nominates residents and fellows for academic programs operated jointly by VA and the affiliated school; residents and fellows shall have the qualifications agreed upon by the school and VA.
   e. Consults with the Director in medical school decisions such as strategic planning, program direction and budgets that may directly affect VA.

2. **Department of Veterans Affairs, its Veterans Integrated Service Networks and component VA facilities**
   a. Operate and manage the VA facility.
   b. VA treatment facilities or groups of treatment facilities as appropriate will establish an Affiliation Partnership Council made up of representatives of affiliated health professional schools. The Council will act as the strategic planning and coordination body for all academic matters involving VA and the affiliates, and will coordinate the tracking of measurable outcomes that emerge from reviews of the academic partnerships. The Council will inform VA of affiliate matters such as strategic planning, program direction or budgetary issues affecting VA. Topical or discipline specific subcommittees to address specific management or strategic interests may be developed as needed in collaboration with the academic and VA leadership to address specific management or strategic interests.

   c. Appoint qualified physicians, dentists, and other health care professionals, as appropriate, to full-time and regular part-time staff of the facility. Receives nominations from the Medical school Dean for faculty appointments to VA staff and welcomes medical school nominations for non-faculty staff positions. The appointed VA staff, including chiefs of service, are responsible to their immediate supervisors.
   d. Consider the attending and consulting staff and trainees for appointment who are nominated by the school.
   e. Cooperate with the medical school in the conduct of appropriate academic programs of education and research.

3. **Director, VA Health Care Facility (or equivalent title)**
   a. Is responsible for the operation of the facility
   b. cooperates with the Affiliation Partnership council and its subcommittees in the conduct of academic programs and the evaluation of participating individuals and groups.

4. **Chief of Staff, VA Health Care Facility (or equivalent title)**
   a. Is responsible to the Director for the professional health care operations covered by the affiliation agreement.
   b. Cooperates with the Affiliation Partnership Council and its subcommittees and the affiliated education institutions in the direction and conduct of academic programs.

5. **Chiefs of Services, VA Health Care Facility (or equivalent title)**
   a. Are responsible to their superiors in VA for the conduct of their services.
   b. With the assistance of the health care facility staff, and in cooperation with consulting and attending staff, assist faculty members in the supervision of the academic programs that are the subject of this agreement and are within their respective services.

6. **Full-time and Part-time VA Staff**
   a. Are responsible to their supervisors in VA for the discharge of their responsibilities.
   b. Participate in the academic programs within their respective services. Those staff with faculty appointments are responsible for the supervision of the education of students and house staff on their service, and may only delegate supervision in unusual circumstances to non-faculty staff. All VA staff who are delegated such supervision must be appropriately credentialed and privileged.

7. **Attending Staff**
   a. Are responsible to the respective chiefs of services while serving as attending physicians for the VA facility.
   b. May be full or part-time staff, consulting and attending, or without compensation.
   c. Accept responsibility for the proper care and treatment of patients in their charge, including the supervision of students and house staff.
   d. Cooperate in achieving the education and research objectives of the academic programs in which they participate.
   e. Hold faculty appointments in the medical school, or are outstanding members of the profession with equivalent professional qualifications acceptable to VA.

8. **Consultants**
   a. Are members of the faculty, have professorial rank or have equivalent professional qualifications acceptable to VA, and are subject to VA regulations concerning consultants.
   b. As representatives of the school, participate in and are responsible for the integrated academic programs of the affiliated VA health care facilities subject to current VA policy and regulations.
   c. Make available to the Director, Chief of Staff, and the appropriate chief of service the benefit of their professional advice and counsel.

## TERMS OF AGREEMENT

The affiliate university/school complies with Title VI of the Civil Rights Act of 1964, Title IX of the Education Amendments of 1972, section 504 of the Rehabilitation Act of 1973, Title III of the Older Americans Amendments of 1975, the Americans with Disabilities Act of 1992, and all related regulations, and assures that it does not, and will not, discriminate against any person on the basis of race, color, sex, creed, national origin, age, or handicap under any program or activity receiving Federal financial assistance.

Nothing in this agreement is intended to be contrary to State or Federal laws. In the even of conflict between terms of this agreement and any applicable State or Federal Law, that State or Federal law will supersede the terms of this agreement. In the event of conflict between State and Federal law, Federal law will govern. When furnishing professional services covered by this agreement, protection of faculty members and students of the affiliated institutions from personal liability while at VA health care facilities will be that which is provided under the Federal Tort Claims Act, as implemented by 38 U.S.C. 7316. Nothing in this agreement grants to the educational institution or the Partnership Council any legal authority to exercise control over any VA program or facility. Ultimate responsibility for the control and operation of VA facilities and programs rests with VA.

Periodic reviews of academic programs and policies will be conducted as necessary under the auspices of VA's Chief Academic Affiliations Officer.

This agreement is in force until further notice; it may be terminated in writing at any time by mutual consent with due consideration of patient care and educational commitments, or by written notice by either party 6 months in advance of the next training experience.

_Joseph B Martin_ 9/11/97              _[signature]_ 9/16/97
JOSEPH MARTIN, M.D., Ph.D. (date)      MICHAEL M. LAWSON          (date)
Dean of the Faculty of Medicine        Medical Center Director
Harvard Medical School                 VA, Brockton/West Roxbury, MA

_[signature]_ 9/26/97
DENIS J. FITZGERALD, M.D., M.H.A. (date)
Network Director
Department of Veterans Affairs

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CASE NUMBER: 03 11573 MEL

MOIRA LOCKE,
    Plaintiff

v.

HARVARD UNIVERSITY, PRESIDENT
& FELLOWS OF HARVARD COLLEGE,
VETERANS ADMINISTRATION, AND
DR. GRACE MUSHRUSH IN HER OFFICIAL
AND INDIVIDUAL CAPACITY,
    Defendants

## AFFIDAVIT OF MARGARET DALE, ASSOCIATE DEAN FOR FACULTY AFFAIRS, HARVARD MEDICAL SCHOOL

1. My name is Margaret Dale; I am employed as Associate Dean for Faculty Affairs at Harvard Medical School and I make this affidavit of my own personal knowledge and based upon a review of records kept in the ordinary course of business at Harvard Medical School.

2. Attached to this Affidavit as Exhibit "A" is a true and accurate copy of an agreement between Harvard Medical School and the United States Department of Veteran Affairs dated September, 1997, and entitled "Memorandum of Affiliation, School of Medicine Agreement Between Department of Veterans Affairs and the Undersigned School of Medicine." (hereinafter "The Agreement").

3. The Agreement was in force and governed the relationship between Harvard Medical School and the Department of Veterans Affairs in May and June, 2002 when according to the Complaint in this action the plaintiff was denied a residency position at a Veterans Administration Hospital.

4. The plaintiff in the above-captioned action alleges that on May 30, 2002 she was offered a psychiatric residency position by Dr. Grace Mushrush, that "a day or so later" the plaintiff informed defendants "through Mushrush" that she [plaintiff] was pregnant; and that "the following day, Defendants, through Mushrush, withdrew the offer to plaintiff on account of Plaintiff's pregnancy."

5. On January 6, 2004, Acting U.S. Attorney, Gerard T. Leone, filed a Certificate in this action acknowledging that Grace Mushrush, M.D. was acting within the course and scope of her employment with the United States at time of events alleged in the complaint.

6. In 2002, Grace Mushrush was not an employee of Harvard Medical School; she did not have authority from Harvard Medical School to offer or rescind offers of appointments to faculty positions or for clinical fellowships with Harvard Medical School.

7. According to Harvard Medical School records, no request or recommendation was ever made by Grace Mushrush, M.D. or any other employee of the United States Department of Veteran Affairs regarding the plaintiff, Moira Locke, being appointed to any faculty or teaching position with Harvard Medical School or being awarded (or denied) a clinical fellowship with Harvard Medical School.

SUBSCRIBED UNDER THE PENALTIES OF PERJURY THIS 26 DAY OF MARCH, 2004:

Margaret L. Dale
Associate Dean for Faculty Affairs
Harvard Medical School

MEMORANDUM OF AFFILIATION
SCHOOL OF MEDICINE AGREEMENT

BETWEEN DEPARTMENT OF VETERANS AFFAIRS (VA)
AND THE UNDERSIGNED SCHOOL OF MEDICINE

VA NETWORK:    NETWORK 1

VA TREATMENT FACILITY:    BROCKTON/WEST ROXBURY, MA

NAME OF SCHOOL OF MEDICINE:    HARVARD MEDICAL SCHOOL

This agreement, when duly executed and approved by the Department of Veterans Affairs (VA), authorizes VA, its Veterans Integrated Service Networks and the listed VA facilities, to affiliate with the university school of medicine for the academic purposes of enhanced patient care, education and research. VA and the affiliated school have a shared responsibility for the academic enterprise. The school accepts primary responsibility for integrated education programs conducted with VA; and VA retains full responsibility for the care of patients, including administrative and professional functions pertaining thereto. Responsibilities are to be shared as follows:

1. **The Medical School**
   a. Nominates membership for the VA Affiliation Partnership Council and its subcommittees; membership will include the Medical School Dean and senior faculty members from appropriate divisions of the medical school.
   b. Nominates faculty to serve as VA medical staff in the number and with qualifications agreed to by the school and VA.
   c. Through the VA facility Director and the medical staff, participates in the supervision of integrated academic programs at the VA. VA staff members who are also faculty members are responsible for student and house staff supervision for educational purposes but may delegate responsibility to non-faculty VA staff members under unusual circumstances.
   d. Nominates residents and fellows for academic programs operated jointly by VA and the affiliated school; residents and fellows shall have the qualifications agreed upon by the school and VA.
   e. Consults with the Director in medical school decisions such as strategic planning, program direction and budgets that may directly affect VA.

2. **Department of Veterans Affairs, its Veterans Integrated Service Networks and component VA facilities**
   a. Operate and manage the VA facility.
   b. VA treatment facilities or groups of treatment facilities as appropriate will establish an Affiliation Partnership Council made up of representatives of affiliated health professional schools. The Council will act as the strategic planning and coordination body for all academic matters involving VA and the affiliates, and will coordinate the tracking of measurable outcomes that emerge from reviews of the academic partnerships. The Council will inform VA of affiliate matters such as strategic planning, program direction or budgetary issues affecting VA. Topical or discipline specific subcommittees to address specific management or strategic interests may be developed as needed in collaboration with the academic and VA leadership to address specific management or strategic interests.

c. Appoint qualified physicians, dentists, and other health care professionals, as appropriate, to full-time and regular part-time staff of the facility. Receives nominations from the Medical school Dean for faculty appointments to VA staff and welcomes medical school nominations for non-faculty staff positions. The appointed VA staff, including chiefs of service, are responsible to their immediate supervisors.

d. Consider the attending and consulting staff and trainees for appointment who are nominated by the school.

e. Cooperate with the medical school in the conduct of appropriate academic programs of education and research.

3. **Director, VA Health Care Facility (or equivalent title)**
   a. Is responsible for the operation of the facility
   b. cooperates with the Affiliation Partnership council and its subcommittees in the conduct of academic programs and the evaluation of participating individuals and groups.

4. **Chief of Staff, VA Health Care Facility (or equivalent title)**
   a. Is responsible to the Director for the professional health care operations covered by the affiliation agreement.
   b. Cooperates with the Affiliation Partnership Council and its subcommittees and the affiliated education institutions in the direction and conduct of academic programs.

5. **Chiefs of Services, VA Health Care Facility (or equivalent title)**
   a. Are responsible to their superiors in VA for the conduct of their services.
   b. With the assistance of the health care facility staff, and in cooperation with consulting and attending staff, assist faculty members in the supervision of the academic programs that are the subject of this agreement and are within their respective services.

6. **Full-time and Part-time VA Staff**
   a. Are responsible to their supervisors in VA for the discharge of their responsibilities.
   b. Participate in the academic programs within their respective services. Those staff with faculty appointments are responsible for the supervision of the education of students and house staff on their service, and may only delegate supervision in unusual circumstances to non-faculty staff. All VA staff who are delegated such supervision must be appropriately credentialed and privileged.

7. **Attending Staff**
   a. Are responsible to the respective chiefs of services while serving as attending physicians for the VA facility.
   b. May be full or part-time staff, consulting and attending, or without compensation.
   c. Accept responsibility for the proper care and treatment of patients in their charge, including the supervision of students and house staff.
   d. Cooperate in achieving the education and research objectives of the academic programs in which they participate.
   e. Hold faculty appointments in the medical school, or are outstanding members of the profession with equivalent professional qualifications acceptable to VA.

8. **Consultants**
   a. Are members of the faculty, have professorial rank or have equivalent professional qualifications acceptable to VA, and are subject to VA regulations concerning consultants.
   b. As representatives of the school, participate in and are responsible for the integrated academic programs of the affiliated VA health care facilities subject to current VA policy and regulations.
   c. Make available to the Director, Chief of Staff, and the appropriate chief of service the benefit of their professional advice and counsel.

## TERMS OF AGREEMENT

The affiliate university/school complies with Title VI of the Civil Rights Act of 1964, Title IX of the Education Amendments of 1972, section 504 of the Rehabilitation Act of 1973, Title III of the Older Americans Amendments of 1975, the Americans with Disabilities Act of 1992, and all related regulations, and assures that it does not, and will not, discriminate against any person on the basis of race, color, sex, creed, national origin, age, or handicap under any program or activity receiving Federal financial assistance.

Nothing in this agreement is intended to be contrary to State or Federal laws. In the even of conflict between terms of this agreement and any applicable State or Federal Law, that State or Federal law will supersede the terms of this agreement. In the event of conflict between State and Federal law, Federal law will govern. When furnishing professional services covered by this agreement, protection of faculty members and students of the affiliated institutions from personal liability while at VA health care facilities will be that which is provided under the Federal Tort Claims Act, as implemented by 38 U.S.C. 7316. Nothing in this agreement grants to the educational institution or the Partnership Council any legal authority to exercise control over any VA program or facility. Ultimate responsibility for the control and operation of VA facilities and programs rests with VA.

Periodic reviews of academic programs and policies will be conducted as necessary under the auspices of VA's Chief Academic Affiliations Officer.

This agreement is in force until further notice; it may be terminated in writing at any time by mutual consent with due consideration of patient care and educational commitments, or by written notice by either party 6 months in advance of the next training experience.

_____ 9/11/97       _____ 7/16/97
JOSEPH MARTIN, M.D., Ph.D.  (date)    MICHAEL M. LAWSON          (date)
Dean of the Faculty of Medicine       Medical Center Director
Harvard Medical School                VA, Brockton/West Roxbury, MA

_____ 9/26/97
DENIS J. FITZGERALD, M.D., M.H.A.  (date)
Network Director
Department of Veterans Affairs