I, Rajendra D. Badgaiyan state under solemn oath the following in reference to the numbered paragraph of the defendant Harvard's concise statement. The paragraph numbers correspond to the statements submitted by Harvard:

6. I held a paid position of clinical fellow at Harvard Medical School, and received paychecks from Harvard University during 3 of the 4 years of residency training in South Shore Psychiatry Residency Training Program at VA Brockton (HU0020).

12. Dr Mushrush did not show me evaluations of my performance during the second, third and fourth year of training. The evaluations that were shown (during the first years of training) have rated my performance either outstanding or good. Further, during my training, I made several requests to make the evaluations available. They were not made available during my entire training (response to Harvard, ex. 4).

14. To the best of my knowledge, in this program no Indian physician has ever been put at the top of the selected candidates. As far as I know, they got admitted either because the candidates selected by the program did not join, or because a residency position got open unexpectedly and no suitable white candidate was available to fill the position. Moreover, to the plaintiff's knowledge no African American candidate was ever admitted to the program until the plaintiff filed complaints of racial discrimination.

15. Most state boards require both foreign and US medical graduates to pass USMLE examinations.

16. I have passed all 3 steps of the USMLE examination required for medical licensing (BRM 189-193).

23. Residents are not allowed to attend evening clinic in the first year of training and I regularly attended the clinic in subsequent years. I am not aware that any patient complained against me. I was not shown a single complaint. On the contrary I recall that at least four patients wrote letters of appreciation.

1

24. During the residency training I was not absent even for a single day without authorization. Further, I always received full salary during the entire training period (except during authorized sick leave).

26. The evaluation of some supervisors who have rated my performance as outstanding have not been produced by the defense. During the training I worked with more than 40 female supervisors, colleagues and nurses. None of them mentioned that I have a problem dealing with female supervisors or colleagues.

29. I was never shown Dr Bolton's evaluation of my performance during the training. I was never told about any of these issues during my training, and I always followed my supervisors' instructions. This is corroborated by the evaluation of other supervisors, some of them have explicitly mentioned that I followed their orders.

31. I do not remember seeing the complaint sent by Dr Kiota (spelling?), or any incidence when I was not there when I was supposed to be. Further, Dr Kiota was not my supervisor and she was not supposed to report my where about to Dr Mushrush. The only contact I had with Dr Kiota was in my rotation with Dr Mufson, who rated my performance as good and sent me an email message saying that I was doing a top-notch job (VA0137 and exhibit A1).

32. I was never supposed to report to Dr Naqvi. I came in his contact during my rotation with Dr Mufson, who as mentioned in paragraph 31, rated my performance as good.

33-35. I had only 5 or 6 two-hour supervision with Dr Osser in my 4 years' training. During these supervisions I assisted him with treatment of 3 or 4 patients (out of several hundred of patients I treated during the training) . One of them gave a letter of appreciation to Dr Osser and Dr Mushrush (Mushrush depo 185). He told me that he had seen several psychiatrists but I was the only one who was able to treat his symptoms. He insisted on continuing treatment with me after my rotation was over. For another patient I

2

pointed out that Dr Osser had made a wrong diagnosis. Dr Osser accepted his mistake (records available). At the end of rotation Dr Osser told me that he is very happy with my performance, which according to him was good to outstanding. He also mentioned that Dr Mushrush told him that I am not a good clinician. None of the problems mentioned in Dr Ossser's evaluation was ever shown or discussed with me. Finally, I never had a 2-week rotation with Dr. Osser  in Taunton State Hospital and was surprised by the negative evaluation produced by the defense for this rotation (VA0130).

37. I have not seen any letter stating that Dr Tishler removed me from the medical service.

39.  I have always followed Dr Gurerra's directives during my training. I have not seen this complaint during my training.

40. The nurse who complained was not on duty and was not on the floor, the day this incidence happened. I provided the patient the best available and appropriate treatment, which was in agreement with the latest recommendation of the expert committee. On my own initiative I had presented the case in psychopharmacology conference of the program. In the conference psychopharmacology experts appreciated the line of treatment and no one suggested that there was a failure on my part. The incidence was never investigated and no psychiatrist with an experience of treating this kind of condition, was ever asked to comment on the alleged lack of proper care, despite my requests. To the best of my knowledge, neither Dr Gurrera nor Dr Mushrush had recent experience of managing acute psychiatric patients.

41. I never had a 2-week rotation with Dr Osser in Taunton State Hospital, and have never seen his evaluations submitted by the defense. To the best of my knowledge, Dr McCarley and Dr Swett based their impressions on incorrect information provided by Dr Mushrush. For example, in an email to Dr Swett, Dr Mushrush mentioned that I have

3

completed only 7 months' inpatient rotation while the board requires 9 months' rotation (VA277). At that point I however, had successfully completed 9 months' rotation (HU0028). Dr McCarley also mentioned in an email message that I have problems in inpatient rotation (HU0024), even though the evaluation of inpatient rotations produced by the defense have rated my performance either as outstanding, good, or satisfactory (BRM0114,0122, 0123,0124,0127,0128,0129). None of my supervisors has made any adverse remark about my work in inpatient units. I addition, among other misinformation, Dr Mushrush told Dr Swett that I had failed oral test and Clinical evaluation unit rotation (VA277) even though I never failed any oral test, or a rotation according to the documents produced by the defense (BRM 114-143).

42. I was admitted to research-track of the residency program and was assured by Dr Mushrush at the time of admission that I will be required to complete only the minimum clinical rotation required by the board and will be given protected research time (BRM0149). This assurance was not honored by Dr Mushrush.

43. Despite my requests, scores of the oral tests were not shown to me during the training. I was never asked to re-take it and the test of May 3, 2002 was not a re-take, it was the scheduled test of the next year. Documents provided by the defense suggest that I did not fail the test.

45. The BRM asked if a disciplinary action was taken against me and I answered 'No' because Dr Mushrush had answered in the same way in all of my 6 applications for limited license sent to the board (BRM 0042,0047,0050).

46. The basis of Dr Swett's opinion was incorrect information given to him by Dr Mushrush as mentioned and exemplified in paragraph 41.

47. To the best of my knowledge, I received DuPont fellowship on recommendation of a panel of judges.

4

50, I believe that it is unlikely for the promotions committee to recommend that I should repeat the rotations that I had passed. To my knowledge the committee has never, in the history of the program asked a resident to repeat rotations that he/she had passed.

52. All but one of my more than 30 supervisors have rated my attitude either outstanding, good, or satisfactory. The defense has still not provided evaluations of other supervisors who have rated my performance as outstanding or good (e.g. Dr Kirshner).

57. When I returned to work after sick leave I returned on full time basis.

58. The issue raised in this paragraph was not serious and I was never stalked by anyone.

59. I did not go to England even once during my entire training period (1999 to 2003).

63. To the best of my knowledge, Dr Mushrush did not route a limited license application submitted in February/March 2003 (well after the EEOC complaint) though the DA or Dr McCarley.

66. I did mention these comments to the VA counselor during a telephone conversation.

68. During the training period, I never absented without authorization. I never received any letter or communication regarding unauthorized absence, and received full salary during the entire training period (except when I was on authorized sick leave).

69. I had contacted the office of Ombudsman at Harvard University and Dr. Mushrush who is a representative of Harvard.

71. To the best of my knowledge, promotions committee did not ask me to repeat inpatient rotations, as mentioned in paragraph 41, because the committee was misinformed that I have not completed required inpatient rotations, it probably asked me to complete remaining period of inpatient rotation.

72. I had reported racially offensive comments of Dr Mushrush to the EEOC counselor during telephone conversations.

75. The VA EEO form requires a complainant to name the VA facility only as a party. I

5

however, identified Dr Mushrush who was acting on behalf of both, the VA and Harvard. I also filed internal complaint through the Head of Harvard Psychiatry Department.

76. Dr Mushrush who is an agent both for the VA and Harvard was the person named in EEOC complaint.

78. When my health improved, I contacted a VA counselor who I believe was an attorney.

81. I was told by Dr Scott Rauch of Massachusetts General Hospital that Dr Mushrush on her own initiative called him and made false negative remarks. I addition, I have heard her making derogatory remarks against me to other persons.

86. I promptly submitted the documents requested by the board.

100. I had no history of high blood pressure or depression prior to July 2002 (Response to Harvard ex. 9).


SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY:

/s/ Rajendra Badgaiyan, M.D.

RAJENDRA BADGAIYAN, M.D.

December 29, 2006

6