Plaintiff's Response to Harvard's Local Rule 56.1 Statement of Material Facts

1. Denied. Harvard South Shore Psychiatry Residency Training Program is operated jointly by the VA and Harvard Medical School. The program is listed in the web site of Harvard Medical School (http://medapps.med.harvard.edu/psych/education-residency.htm), which acknowledges Dr Mushrush as its Director (Exhibit 1; McCarley dep. ex. 4). The memorandum of affiliation between the VA and Harvard stipulates that the medical school "[n]ominates residents and fellows for academic programs operated jointly by the VA and the affiliated school. It also stipulates that residents in the program will be supervised by the faculty nominated by Harvard (McCarley dep. ex 2). Further, the plaintiff received appointment letters and correspondences on the stationary of Harvard Medical School that has the Harvard logo (Exhibit 2, VA120, VA245). He was paid by Harvard for 3 of his 4 years of training (HU0020) and his graduation certificate prominently displays Harvard logo and is signed by the Head of Harvard Department of Psychiatry (McCarley dep. ex 5). In addition, the program Director Dr Mushrush reports to the Head of the Harvard Psychiatry Department (Mushrush dep. I, 35), and she confirmed that there is a Harvard Psychiatry Department at the VA Brockton (Mushrush dep. I, 39). The ACGME (http://www.acgme.org/adspublic/) has also listed the program as Harvard Medical School program (Exhibit 3). Further, a recent advertisement that seeks to replace Dr Mushrush as the program director, names Harvard Medical School as recruiting institution (Exhibit 4) and Dr. Mushrush mentioned that the VA Brockton is

2. Admitted.

3. Admitted.

4. Admitted.

5. Admitted.

6. Admitted, but the memorandum of affiliation also stipulates that the residents will be supervised by the staff that are nominated faculty by Harvard Medical School. Dr Mushrush could not have supervised the plaintiff, and could not have been the Director of Harvard South Shore Psychiatry Residency Training Program, if Harvard Medical School had not nominated her as a faculty. Finally, the affiliation agreement between Harvard and the VA states that both parties will "have a shared responsibility for the academic enterprise" and that the medical school "[n]ominates residents and fellows for academic programs operated jointly by the VA and the affiliated school" (McCarley dep. ex 2). Finally, the plaintiff held the position of paid clinical fellow Harvard Medical School, and received paychecks from Harvard for 3 of his 4 years' training (HU0020; Plaintiff's Affidavit, paragraph 6).

7. Admitted.

8. Denied. The program is operated jointly by Harvard and VA (see paragraph 1). The plaintiff received paychecks from Harvard University for 3 of the 4 years' training in the Harvard South Shore Psychiatry Residency Training Program (HU0020; Plaintiff's Affidavit, paragraph 6).

9. Denied. Only the physicians who are appointed faculty by Harvard Medical School are authorized to supervise residents of Harvard South Shore Psychiatry Residency Training Program (McCarley dep. ex 2).

10. Admitted but the VA rules were not followed for taking actions against the plaintiff. (Mushrush dep. II 20-23). Further, Dr Mushrush gave conflicting testimony concerning existence of the VA rules governing probation of residents. In her first deposition she stated that the VA has no rule for putting a resident on probation (Mushrush dep. I, 178), but in the second deposition she mentioned that they indeed have some rules (Mushrush dep. II, 19), but they were not followed to put the plaintiff on probation. The plaintiff held a paid position of clinical fellow

of Harvard medical School and received paychecks from Harvard during most of his training period (see paragraphs 1,6,8).

11. Denied. The minimum requirement of clinical training is less than 36 months (Mushrush dep. I, 68-69; 100-101).

12. Denied. Dispute 36 months' minimum clinical training requirement (Mushrush dep. I, 68-69; 100-101) and draw attention to the Harvard Medical School web site, which clearly mentions that the goal of the school is to comply with the requirements of ACGME in its residency programs that include Harvard South Shore Psychiatry Residency Training Program (Exhibit 1 and McCarley ex. 4). It implies that Harvard Medical School is responsible for compliance of ACGME regulations. Moreover, as mentioned in paragraph 1, ACGME has listed the program as a Harvard Medical School program.

> Further, the plaintiff wants to point out that a number of ACGME rules aimed at providing fair training opportunity to all residents (http://www.acgme.org/acWebsite/dutyHours/dh_dutyHoursCommonPR.pdf; Exhibit 5), were not followed in the plaintiff's case. For example, the rules stipulate that the program director should show the residents their evaluations at least once in 6 months and the shortcomings should be discussed and documented. It also stipulates that the evaluation should be accessible to residents (Exhibit 5). Despite repeated requests (Exhibit 7a and 7b), evaluations were not shown to the plaintiff or discussed in the last 3 years of his training ( Plaintiff's Affidavit, paragraph 12). Further, despite requests, defendants have not provided evidence that the evaluations were shown.

13. Admitted.

14. Denied. During the plaintiff's training period (1999 to 2003) the proportion of Indian

residents in the program was about 10% ( Plaintiff's Affidavit paragraph 14). To the best of plaintiff's knowledge, the program has never put an Indian physician on the top of the list of selected candidates. These physicians got admitted either because the candidates selected by the program did not join, or because a residency position got open unexpectedly and no suitable white candidate was available to fill the position. Moreover, to the plaintiff's knowledge no African American candidate was admitted to the program since its inception in 1983 until the plaintiff filed complaints of racial discrimination ( Plaintiff's Affidavit, paragraph 14).

15. Denied. Both foreign and US medical graduates have to pass USMLE examinations ( Plaintiff's Affidavit, paragraph 15).

16. Denied to the extent that this suggests that plaintiff did not ultimately pass all the examinations. The plaintiff passed all the examinations required for medical licensing in the US ( Plaintiff's Affidavit paragraph 16 and BRM 189-193).

17. Admitted.

18. Admitted.

19. Admitted.

20. Denied. Records are kept in the training office of the program (Mushrush dep. I, 87).

21. Admitted, but during the same period Dr Mushrush was also an Assistant professor of Harvard Medical School (Mushrush dep. I, 28,201), and reported to the Head of Harvard Psychiatry Department (Mushrush dep. I, 35).

22. Denied. Dr Mushrush's own stationery, used at relevant times in this case, has Harvard Medical School, Department of Psychiatry printed prominently, and it has only Harvard logo (Exhibit 2, VA120, VA245). The web site of Harvard Medical School (see paragraph 1) and Dr Mushrush's testimony (Mushrush dep. I, 39) clearly indicate that the VA Brockton is a part of

Harvard Medical School. Further, Mushrush has authority to select and appoint residents for the Harvard South Shore Residency Training Program (Mushrush dep. I, 67), which is a program of Harvard Medical School (paragraph 1 and Exhibits 1, 2, 3 and 4).

23. Denied. Residents are not allowed to attend evening clinic in the first year of training. The plaintiff regularly attended the clinic in subsequent years ( Plaintiff's Affidavit, paragraph 23). No record of plaintiff's absence, or warning for being absent was provided by the defendants despite our requests. Plaintiff is not aware of any complaint by a patient, the complaints were neither shown to the plaintiff, nor provided by the defendants. On the contrary, patients' appreciation for the plaintiff is on record (Mushrush dep. I, 185).

24. Denied, The plaintiff never had unauthorized absence. No specific date of unauthorized absence was provided. If he had absented without authorization, he would have been warned or reprimanded. No such warning or reprimand was produced. Moreover, the plaintiff always received full salary during his entire training (except during authorized sick leave), which is not possible, if he were absent without authorization ( Plaintiff's Affidavit, paragraph 24).

25. Denied. No document provided. Dr Festin's evaluation was good in 14 areas and satisfactory in 2 areas according to the documents submitted by the defendants (BRM 123).

26. Denied. The evaluation of plaintiff's supervisors does not show a pattern of problem (BRM 114-140; BRM0166,0167) even though, the defense has not produced evaluation of a few other supervisors who have rated the plaintiff's performance either outstanding or good. The evaluations of supervisors who oversaw the plaintiff's work for an extended period of time (more than a year) have consistently been outstanding or good in all areas (BRM 0135,0136,0140,0166,0167). During the training plaintiff worked with more than 40 female supervisors, colleagues and nurses. None of them has mentioned that the plaintiff has a problem

working with female supervisors or colleagues. Assuming that the evaluations produced by the defense are true, except one, all of his female supervisors evaluated his performance and attitude either good or satisfactory. The only female nurse, who complained about a patient admitted by the plaintiff, later wrote a letter to Dr Mushrush appreciating the plaintiff's work (BRM0139). The female supervisor who supervised him for four months (Dr Festin) rated his performance and attitude as good and mentioned that he worked hard and is receptive to her suggestions (see paragraph 26; BRM 123).

27. Denied. Dr Mushrush wrote the letter. The minutes of promotions committee signed by the members, was never provided despite our requests. Moreover, the defense has produced three different versions (VA 228, VA 152-153, VA 277) of the minutes of the meeting. All of them are signed by Dr. Mushrush, and none has signatures of the other members of the committee.

28. Admitted, but misleading as stated. Dr Sieffer rated the plaintiff's performance as good in 1, below average in 1, and average in 16 areas. Dr. Sieffer supervised the plaintiff in the beginning of his training (PGY 1). At that stage a resident is not supposed to be independent. Dr Sieffer also noted that the plaintiff gave 'outstanding talk in the round that has useful psych information' (BRM 0117).

29. Denied. The plaintiff was never told by Dr Bolton that she is unhappy with his performance. It is the policy of all major training institutions including Harvard South Shore Psychiatry Residency Program to warn residents if their performances are not satisfactory (Exhibit 8; Mushrush dep. II, 37). No such warning, oral or in writing was ever given to the plaintiff (Mushrush dep. II, 37). This evaluation is not in agreement with the plaintiff's other supervisors' evaluations produced by the defense (BRM 114-140, and BRM0166,0167), even though the defense has not produced the evaluation of a few supervisors who have rated the plaintiff's

performance as outstanding or good. The evaluation of supervisors who oversaw the plaintiff's performance for an extended periods of time have consistently been outstanding or good in all areas (BRM 0135,0136,0140,0166,0167). The plaintiff's other supervisor at McLean hospital, Dr. Villa (who supervised every day for a full month as opposed to a few hours' supervision by Dr Bolton) not only rated his performance as outstanding and good, but also noted that he plaintiff was an 'effective member of team' and was 'eager to engage with patients and staff' (BRM0127). The plaintiff received similar comments and evaluations in many of his rotations. Moreover, Dr Bolton's rating of the plaintiff is unclear because the defense has produced two different versions of her evaluation, and both have multiple alterations and there is evidence that they are tampered (Mushrush dep. I, 123-128).

Dr. Bolton supervised the plaintiff only for 2 days in his 4 years' training. Even if we accept the defendants' contention that Dr Bolton's evaluation represented evaluation of 5 supervisors of the rotation, which the plaintiff was supposed to attend for only 16 days (4 days a week x 4 weeks). During this period, he was on an authorized leave of 5 days (Exhibit 11). Out of the 11 days that was supposed to work, the documents submitted by the defense confirm that he was supervised by 5 different physicians (BRM0126). It is therefore highly unlikely that the plaintiff had several days' unauthorized absence in this rotation, particularly because the dates of the absence were not specified and no evidence of a warning or reprimand for his absence was produced.

30. Admitted, but deny and doubt veracity of the statement because some of the supervisors mentioned, told the plaintiff that he has done a good job in that rotation (Pl. dep. 164).

31. Admitted. But this complaint was never produced and the plaintiff does not remember any

incidence when he was not there when he was supposed to be. Dr Kiota was not plaintiff's supervisor, she was not supposed to report plaintiff's where about to Dr Mushrush. The only contact the plaintiff had with Dr Kiota was in his rotation with Dr Mufson, who rated the plaintiff's performance as good and sent an email message saying that he was doing a top-notch job ( Plaintiff's Affidavit paragraph 31; VA0137).

32. Denied. This complaint was never produced or shown to the plaintiff. Further, the plaintiff was never supposed to report to Dr Naqvi. The plaintiff came in contact with him in the rotation with Dr Mufson and as mentioned in paragraph 31, Dr Mufson rated the plaintiff's performance as good (see paragraph 31).

33-35. Deny the allegations. Dr Osser supervised the plaintiff only in 5 or 6 two-hour sessions in his 4 years' training. During these supervisions the plaintiff assisted him with treatment of 3 or 4 patients (out of several hundred of patients the plaintiff treated during his training). One of them gave a letter of appreciation to Dr Osser and Dr Mushrush (BRM132; Mushrush dep. I, 185) stating that he had seen several psychiatrists but the plaintiff was the only one who was able to treat his symptoms. He insisted on continuing treatment with him after the plaintiff's rotation was over. For another patient, the plaintiff pointed out that Dr Osser had made a wrong diagnosis. Dr Osser accepted his mistake (records available). At the end of rotation Dr Osser told the plaintiff that he is very happy and that his performance was good to outstanding. Dr Osser also mentioned that Dr Mushrush told him that the plaintiff is not a good clinician. None of the issues mentioned in Dr Ossser's evaluation was ever told to the plaintiff or discussed with him during his training. They are not factually accurate. In any event, according to the documents submitted by defense, Dr Osser passed the plaintiff and rated his performance as satisfactory to good (BRM0131). He also noted that the plaintiff has "several strengths, has (sic) – good rapport

and ability to engage a patient psychotherapeutically, good ability to writeup his case clearly, coherently, with good psychoanalytic diagnosis..". Finally, the defense produced another evaluation of Dr Osser (VA0130) for a rotation that the plaintiff never had ( Plaintiff's Affidavit, paragraph 35).

36. Denied. No such letter was shown, and Dr Mufson's evaluation of plaintiff's performance was good to outstanding (see paragraph 31).

37. Denied. No such letter was produced.

38. Accepted.

39. Admit the letter but deny the content. This complaint was never shown to the plaintiff during his training and the plaintiff never violated Dr Gurrera's directives ( Plaintiff's Affidavit, paragraph 39). In any event Dr Mushrush testified that Dr Gurrera complains about all residents and is difficult to please (Mushrush Dep. II, 51).

40. Admitted but contents are not true. The nurse who initiated the complaint was not on duty and was not on the floor, the day alleged incidence happened. The plaintiff provided this patient the best available and most appropriate treatment, which is in agreement with the latest recommendation of the expert committee. On his own initiative, the plaintiff had presented the case in psychopharmacology conference of the training program. In the conference psychopharmacology experts appreciated the treatment and no one suggested that there was a failure on the plaintiff's part. The incidence was never investigated and no psychiatrist who has an experience of treating this kind of condition was ever asked by the program to comment on the alleged lack of proper care despite the plaintiff's requests ( Plaintiff's Affidavit paragraph 40, and BRM0147). Further, both, Dr Gurrera and Dr Mushrush have no recent experience of managing acute psychiatric patients.

41. Denied all but the letter to Dr McCarley. The plaintiff never had 2-week rotation with Dr Osser in Taunton State Hospital ( Plaintiff's Affidavit paragraph 33-35 and 41). Documents provided by the defense suggest that both Dr McCarley and Dr Swett were misinformed about the plaintiff's training performance. For example, in an email to Dr Swett, Dr Mushrush mentioned that the plaintiff has completed only 7 months' inpatient rotation while the board requires 9 months' rotation (VA277). At that point however, the plaintiff had successfully completed 9 months' rotation (HU0028). Dr McCarley also mentioned in an email message to the plaintiff that he has problems in inpatient rotation (HU0024), even though the evaluation of inpatient rotations produced by the defense have rated the plaintiff's performance either as outstanding, good, or satisfactory (BRM0114,0122, 0123,0124,0127,0128,0129). None of his supervisors has made any adverse remark about the plaintiff's work in inpatient units. In addition, among other misinformation, Dr Mushrush told Dr Swett that the plaintiff had failed oral test and Clinical evaluation unit rotation (VA277) even though the plaintiff never failed any oral test, or a rotation according to the documents produced by the defense (BRM 114-143).

42. Admitted but it was because Dr Mushrush refused to honor the terms of training agreed by her at the time of the plaintiff's admission to the program ( Plaintiff's Affidavit paragraph 42; BRM149).

43. Denied.  Documents produced by the defense suggest that the plaintiff did not fail the oral test (BRM0141-143; BRM0154,0155,0158). Dr Mushrush provided incorrect information to the plaintiff and the Board of registration in medicine that he had failed the test (BRM0148). She also mentioned that the failure was a reason why the plaintiff was put on probation. She however, changed the position later and told the board (BRM0185) and testified that the plaintiff was put on probation because he refused to re-take the test (Mushrush dep. I 160, 185-189, dep.

II 24,25). She gave conflicting testimony concerning documentation of the plaintiff's alleged refusal to retake the test. In the first deposition she testified that the it is documented in emails and note (Mushrush dep. I, 160-161) but in the second deposition she testified that she does not recall if it was documented (Mushrush dep. II 25). Nonetheless, the defense never produced any document suggesting that the plaintiff was ever asked to re-take the test, and the plaintiff has testified that he was never asked to retake the test (Pl. dep. 35,40). Further, Dr Mushrush herself deposed that the test was not properly administered and the plaintiff was not allowed to use allotted time (Mushrush dep. I, 161 and II, 16). The plaintiff further asserts that test of May 3, 2002 was not a re-take it was the scheduled test of the next year. Further, the program never took the plaintiff off 'probation' even though he graduated the program (Mushrush dep. I, 187).

44. Admit the email message, but dispute facts. Documents provided by the defense indicate that the plaintiff did not fail oral test, and he had not failed McLean rotation. Evaluations provided by the defense do not indicate that any of the plaintiff's supervisors had complained against him at the time he was put on probation. The plaintiff never said that he did not want to be in a rotation, and he never taught at Mass. General Hospital. Further, the plaintiff has reasons to believe that neither his performance nor the probation was discussed in the training committee meeting as claimed by Dr Mushrush (Pl dep. 284; Plaintiff's Affidavit paragraph 44). The defendants have not produced documents to support any of the grounds on the basis of which the plaintiff was put on probation. They have also not clarified, which rule was used to put a resident on probation.

45. Denied. The probation was not official. Dr Mushrush is not authorized to put a resident on probation according to the rules of Harvard Medical School (Exhibit 6). Dr. Mushrush did not mention the probation to the board in any of the plaintiff's three subsequent applications for limited license to practice medicine (Mushrush dep. II 33-34 and BRM 0042,0047,0050). She

herself told the plaintiff that it was not official and that he should forget about it (Pl dep. 45). Moreover, the disclosure indicates that none of the grounds for probation mentioned in the email are factually correct (see paragraph 44).

46. Denied. Dr Swett did not have independent opinion (see paragraph 41); he did not examine the plaintiff's records and was told by Dr Mushrush that the plaintiff had failed oral test and rotations, and that all of his supervisors have complained against him. Discovery revealed that all of these allegations are untrue (see paragraph 44).

47. Denied. The plaintiff received DuPont fellowship on recommendation of a panel of judges ( Plaintiff's Affidavit paragraph 47).

48. Admitted.

49. Denied. The composition of promotions committee is determined on case by case basis by Dr Mushrush based on the candidate she wants to take action against (Mushrush dep. I 106).

50. Denied. The defense has never produced minutes of the promotions committee meeting that has signatures of the members, and the plaintiff testified that he is not sure whether the committee made alleged decisions (Pl. dep. 288). It is unlikely for the promotions committee to recommend that the plaintiff repeat rotations that he had passed. To his knowledge never in the history of program, a resident was asked to repeat the rotations that he/she had passed. In addition, two of the three members of the committee (Dr Festin and Dr Levitt) who had supervised the plaintiff, have rated his performance as outstanding or good. They never complained about the plaintiff's performance.

51. Denied. Dr Mushrush indicated her disliking of the plaintiff and indicated to Dr Mufson, Dr Chang and Dr Osser that he should not receive good evaluation in their rotations (Pl. dep. 293).

52. Denied. As mentioned in the paragraph 41, Dr McCarley's opinion was based on incorrect

information provided by Dr Mushrush. Dr McCarley's statement that 'he [plaintiff] was not passing' indicates that the opinion was not based on facts. The plaintiff never failed and majority of his more than 30 supervisors rated his attitude either outstanding, good, or satisfactory (BRM 114-140, and BRM0166,0167). The defense has still not provided evaluations of a few supervisors who have rated the plaintiff's performance either outstanding or good ( Plaintiff's Affidavit, paragraph 52).

53. Admitted.

54. Admitted.

55. Admitted, but Dr Akhter also testified that Dr Mushrush did not take any action when he complained about racial bias of his supervisor (Akhter deposition, pages 12-14).

56. Admitted.

57. Denied. The plaintiff returned on full time basis after illness ( Plaintiff's Affidavit, paragraph 57).

58. Admitted, but the plaintiff did not consider the matter serious, and denies that he was stalked ( Plaintiff's Affidavit, paragraph 58).

59. Denied. The plaintiff did not go to England even once during his entire residency training. ( Plaintiff's Affidavit, paragraph 59).

60. Admitted. The plaintiff got anxious and sick when he received an email message from Dr Mushrush, indicating that she has put the plaintiff on probation without following due process, without any warning, and without showing him any document to support the grounds for putting him on probation. All of the grounds were later proved to be baseless (see paragraph 44 and BRM 149).

63. Denied. To the best of the plaintiff's knowledge, Dr Mushrush did not route the limited

license application filed in February/March 2003 (well after the EEOC complaint) through the DA or Dr McCarley ( Plaintiff's Affidavit, paragraph 63).

64. Admit the deposition.

65. Admitted.

66. Admitted, but the plaintiff did mention these comments to the VA counselor during a telephone conversation ( Plaintiff's Affidavit, paragraph 66).

67. Admitted.

68. Denied. Misleading as stated. Dr Mushrush told the plaintiff that if he keeps requesting his supervisors for permission to attend research meetings (and offer to put in additional time equivalent to twice the amount of time spent in the meeting), she would spoil his career. The phrase 'keep doing' in the plaintiff's deposition refers to this request.  Further, the plaintiff never absented without authorization, and he never received any letter or communication regarding unauthorized absence and received full salary during the entire training period (except when he was on authorized sick leave) ( Plaintiff's Affidavit, paragraph 68).

69. Denied. The plaintiff also contacted the office of Ombudsman at Harvard and Dr. Mushrush who is a representative of Harvard (see paragraph 1).

70. Admitted but Dr Swett had no access to training record of the plaintiff (Exhibit 7a) and he was misinformed about the plaintiff's performance (See paragraph 41).

71. Denied. The plaintiff has reasons to believe that the promotions committee could not have asked him to repeat the rotations that the plaintiff had passed (see paragraph 50;  Plaintiff's Affidavit paragraph 71).

72. Admitted. In addition to this, other racially offensive comments of Dr Mushrush were reported to the EEOC counselor during telephone conversation.

73. Denied. The plaintiff testified that the comments were made several times and that he was offended by the comments (Pl. dep. 109-110).

74. Denied. During the discovery it was noted that another resident of his class had serious problems (Exhibit 8) but she was not put on probation and her supervisors' complaints were not reported to the board. In addition, in a nationally administered test of clinical skill, performance of plaintiff was the best in his class and was better than 90% of his senior colleagues (Exhibit 9).

75. Denied. The VA EEOC form requires the complainant to name only the VA facility as a party. However, the plaintiff identified Dr Mushrush who was acting on behalf of both, the VA and Harvard (see paragraph 1). Plaintiff also filed internal complaint through the Head of Harvard Psychiatry Department (HU0026-28) and had contacted the office of Ombudsman at Harvard University (see paragraph 69).

76. Denied. Dr Mushrush who is an agent of both, the VA and Harvard was the person named in the complaint (paragraph 1 and Plaintiff's Affidavit paragraph 76).

77. Denied. Dr Mushrush who represented Harvard (see paragraph 1) was involved in the EEOC inquiry.

78. Admitted, but the attorney was a VA counselor with whom the plaintiff had a telephone conversation regarding the procedure to file a complaint ( Plaintiff's Affidavit, paragraph 78).

79. Denied. Only the first complaint was not filed within 45 days, and some of the complaints were dismissed because they did not fall within EEOC coverage ( Plaintiff's Affidavit, paragraph 79).

80. Admitted but there were other comments and actions in addition to those listed.

81. Accepted but the plaintiff heard other derogatory comments, which Dr Mushrush made to a third party. Misleading and derogatory comments of Dr Mushrush to Dr Swett has been

produced by defense (See paragraph 41 and Plaintiff's Affidavit, paragraph 81).

82. Admitted.

83. Denied. Dr Mushrush had the opportunity at her deposition to distinguish between probation and discipline, but did not do so (Mushrush dep. I 184-188; II 19-40).

84- Admitted.

85- Admitted.

86. Denied. The plaintiff promptly submitted the documents requested by the board.

87. Admitted, but deny that Dr Mushrush provided correct information. Having thrice previously not deemed the purported probation of July 01 important enough to report, and having told plaintiff it was unofficial and withdrawn (Pl dep. 45), Dr. Mushrush did not have to report the probation on the plaintiff's application for a permanent license. She has been dealing with the board for more than 20 years and knows that the board takes the probation seriously. In addition, she misinformed the board about the plaintiff's performance and attitude. She also discriminated him in reporting uninvestigated, unsubstantiated and factually incorrect complaints to the board without even showing them to the plaintiff (Pl dep. 217-218; Mushrush dep. II 30-32)

88. Admitted.

89. Admitted, but Dr Myer did tell the plaintiff what Dr Mushrush told him (Pl dep. 67). Dr Mushrush also testified that she told Dr Meyer that she is not sure if the plaintiff is safe to practice psychiatry (Mushrush dep. I 136), even though she believes that the plaintiff is a competent psychiatrist (Mushrush dep. I, 181).

90. Admitted

91. Admitted.

92. Admitted.

93. Admitted.

94. Admitted.

95. Admitted.

96. Admitted, but Dr Mushrush's actions forced the plaintiff to leave his residency training in Nuclear Medicine.

97. Admitted.

98. Admitted but the plaintiff does not recall making the alleged comment to Dr Mushrush.

99. Admitted.

100. Denied. The plaintiff's sickness began when he was being harassed and discriminated in the program. He had no prior history of high blood pressure (Exhibit 10).

101. Admitted.


List of Exhibits Submitted:

Exhibit 1, Harvard Medical School web page

Exhibit 2, Mushrush stationary with Harvard logo

Exhibit 3, ACGME list of accredited programs

Exhibit 4, Advertisement to fill the position of Program Director

Exhibit 5, ACGME rules (relevant pages)

Exhibit 6, Harvard Medical School rules

Exhibit 7, Requests for evaluation

Exhibit 8, Warning letter to a resident

Exhibit 9, PRITE

Exhibit 10, Letter re high blood pressure

Exhibit 11, Leave application

Also filed herewith is the Plaintiff's Affidavit (with Exhibits).

   WHEREFORE, the plaintiff prays that the Harvard's Motion for Summary Judgment be denied and that the Honorable Court make such further orders as it deems meet and just.

                      Respectfully submitted,
                      the plaintiff,
                      Rajendra Badgaiyan, M.D.,
                      by his attorney:

                      /s/ Gregory R. Barison

                      _____
                      Gregory R. Barison
                      Weston Patrick, P.A.
                      84 State Street / 11th Floor
                      Boston, MA 02109-2299
                      (617) 742-9310
                      gbarison@comcast.net
                      BBO # 029340

Date: December 30, 2006