I, Rajendra D. Badgaiyan state under solemn oath the following in reference to the numbered paragraph of the defendant VA's concise statement. The paragraph numbers correspond to the statements submitted by the VA:

3. I was never told by Dr Bolton that I was ever absent without authorization, disregarded the supervisor's recommendations, or had difficulty interacting with nursing or triage staff. None of these allegations are true. It is the policy of all major training institutions including Harvard South Shore Psychiatry Residency Program to warn the residents if their performances are not satisfactory (Response to VA, Exhibit 1). No such warning, oral or written was ever given to me. This evaluation is not in agreement with the evaluations of other supervisors, produced by the defense (BRM 114-140, and BRM0166,0167), even though the defense has not produced evaluation of a few other supervisors who have rated my performance as outstanding or good. The evaluation of supervisors who supervised me for more than a year have consistently been outstanding or good in all areas (BRM 0135,0136,0140,0166,0167). My other supervisor at McLean hospital, Dr Villa (who supervised every day for a full month as opposed to a few hours' supervision by Dr Bolton) not only rated my performance as outstanding or good, but also noted that I was an 'effective member of team' and was 'eager to engage with patients and staff. (BRM0127). I received similar comments and evaluations in many of my rotations. Moreover, Dr Bolton's rating of my performance is unclear because the defense has produced two different versions of her evaluations, and both have multiple alterations (Mushrush dep. I, 123-128). Further, because I never absented without authorization, I never received any letter or communication regarding unauthorized

absence and received full salary during the entire training period (except during the period when I was on authorized sick leave).

4. The discovery revealed that the I passed the oral test but Dr Mushrush had declared that I had failed (BRM141-143). My performance was better than most residents of the program because many residents fail each year in oral tests (Mushrush dep. I, 183) and in a nationally administered test of clinical skill (PRITE) my performance was the best in the class and was better than 90% of my senior colleagues (Response to VA Exhibit 2). Alleged poor judgment is a complaint filed by a nurse who was not on duty and not around the patient on the day of alleged incidence. I provided this patient the best available and most appropriate treatment, which was in agreement with the latest recommendations of the expert committee. On my own initiative, I had presented the case in psychopharmacology conference of the program. In the conference psychopharmacology experts appreciated the treatment and no one suggested that there was a failure on my part. The incidence was never investigated and no psychiatrist with an experience of treating this kind of condition was ever asked by the program to comment on the alleged lack of proper care, despite my requests (Affidavit paragraph 4, and BRM0147). Dr Gurrera was not the chief of inpatient psychiatry, he was an administrator and to my knowledge, neither Dr Gurrera not Dr Mushrush had recent experience of managing an acute psychiatric patient and they do not seem to have updated knowledge of psychiatric medications.

5. I never had a 2-week rotation with Dr Osser in Taunton State Hospital.

6. Dr Osser supervised me only for 5 or 6 two-hour sessions in my 4 years' training. During this supervision I assisted him with treatment of 3 or 4 patients (out of several hundred of patients I had treated during the training). One of them gave a letter of appreciation to Dr Osser and Dr Mushrush (Mushrush depo 185) stating that he had seen several psychiatrists but I was the only one who was able to treat his symptoms. He insisted on continuing treatment with me after my rotation was over. For another patient, I pointed out that Dr Osser had made a wrong diagnosis. Dr Osser accepted his mistake (records available). At the end of rotation Dr Osser told me that he is very happy with me and according to him, my performance was good to outstanding. Dr Osser also mentioned that Dr Mushrush told him that I am not a good clinician. None of the issues mentioned in Dr Ossser's evaluation was ever told or discussed with me during the training. They are factually inaccurate. In any event, according to the documents submitted by the defense Dr Osser passed me and rated my performance as satisfactory (BRM0131). Finally, the defense produced another evaluation of Dr Osser (VA0130) for a rotation that I never had (Affidavit, paragraph 6).

7. Because of the actions of Dr Mushrush I have not been able to get a license to practice medicine. Besides causing physical and mental trauma, her actions have stunted my career. Further, her actions have irreversibly hurt my professional and personal reputation and have put him in financially unstable and difficult position. The actions have put a black mark on my unblemished career and professional standing, and have razed my dreams of practicing medicine. Had Dr Mushrush not acted in vengeance, and had she not discriminated me, I would have been the first graduate of the program to get a senior faculty position in Psychiatry. In its more than 20 years'

   history, none of the graduates of the program has been able to get a senior faculty appointment anywhere in the country. I, on the other hand, was offered a faculty position in the Psychiatry department of Massachusetts General Hospital, which has been consistently rated as the best psychiatry department in the country. I was unable to accept this and other positions offered by reputed institutions, because of the actions of Dr. Mushrush.

8. The evaluation of my supervisors produced by the defense (BRM 114-140, and BRM0166,0167), suggests that all but one of my over 30 supervisors have rated my performance either outstanding, good or satisfactory. The defense has not produced the evaluation of some of supervisors who have rated my performance as outstanding and good. The evaluations of supervisors who oversaw my performance for an extended period of time (more than a year) have consistently been outstanding or good in all areas (BRM 0135,0136,0140,0166,0167).

9. This complaint was never shown to me during my training and I never violated Dr Gurrera's directives. The incidence as described is factually incorrect. The patient was never in danger and the transfer was not urgent. Even though I accepted him for transfer around 2 am, he was not transferred until 10 am. In any event, Dr Mushrush testified that Dr Gurrera complains about all residents and is difficult to please (Mushrush Depo II, 51). Dr Gurrera was not my supervisor and no attending staff was present at the time.

10. As mentioned in paragraph 8, only one of my about 30 supervisors has rated my performance marginal. I was never shown any adverse remark or evaluation of my supervisors during my entire training period. My clinical skill was demonstrated in the nationally administered test of psychiatric clinical skill (PRITE) in which my

performance was the best in the class and was better than 90% of my senior colleagues (Response to VA Exhibit 2).

SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY:

/s/ Rajendra Badgaiyan

RAJENDRA BADGAIYAN, M.D.

December 27, 2006